# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 18, 2009

Charles R. Fulbruge III
Clerk

No. 08-20229

ST PAUL FIRE & MARINE INSURANCE COMPANY

Plaintiff-Appellee

v.

THEODORE F LABUZAN; DEEANN S LABUZAN

Defendants-Appellants

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before REAVLEY, BARKSDALE, and GARZA, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

This appeal presents an issue of first impression for our court: to what extent, if any, do Theodore F. Labuzan, and his wife, Deeann Labuzan, creditors of the bankruptcy debtor, have standing to claim damages based on violations of the bankruptcy automatic-stay provision, 11 U.S.C. § 362(k) ("[A]n individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages".). The Labuzans challenge the district court's ruling they lack standing to pursue a claim under § 362(k). VACATED and REMANDED.

I.

The Labuzans owned 99 percent of the limited, and 100 percent of the general, partnership interest in Contractor Technology, Ltd. (CTL), a construction company. St. Paul Fire & Marine Insurance Company provided payment and performance bonds for several of CTL's projects. In turn, the Labuzans had a personal indemnity agreement with St. Paul in the event it had to pay claims under those bonds.

On 15 May 2005, with several projects ongoing, CTL filed a voluntary petition for Chapter 11 bankruptcy reorganization. Approximately one week later, in claimed violation of the 11 U.S.C. § 362(k) automatic-stay provision, St. Paul contacted the owners of those ongoing projects and advised them: CTL was in bankruptcy; and, if a project owner made payment to CTL and St. Paul was later required to pay under the CTL bonds, St. Paul would reduce its liability to the project owner by any amount paid CTL by that owner.

Because of alleged resulting reduced revenues, CTL was unable to meet its financial obligations. Its Chapter 11 reorganization was converted into a Chapter 7 liquidation proceeding in June 2005.

St. Paul paid over $32 million on its CTL bonds. Along that line, in November 2005, St. Paul sued the Labuzans in district court for breach of their indemnity agreement with St. Paul.

In response, the Labuzans, *inter alia*, raised as an affirmative defense St. Paul's claimed violation of the § 362(k) automatic-stay provision. The Labuzans claimed such violation prevented CTL from reorganizing successfully and, therefore, caused St. Paul's having to pay on its CTL bonds. The Labuzans claimed the following damages: $51,087,855 for loss of value suffered by CTL;

$2,245,000 for judgments against Theodore Labuzan, and $1,167,000 for other possible judgments that might be entered against him; $634,187 for IRS liens against CTL; $414,101 for attorney's fees; and $2,900,000 for loss of Theodore Labuzan's earning capacity.

In January 2007, St. Paul moved for summary judgment on its indemnity claims. On the other hand, that January and February, respectively, the Labuzans and CTL's Bankruptcy Trustee (the Trustee) filed adversary proceedings against St. Paul in bankruptcy court, seeking compensatory and punitive damages based on St. Paul's claimed violation of § 362(k)'s automatic-stay provision.

That May, St. Paul's action against the Labuzans in district court, and the Labuzans' adversary proceeding against St. Paul in bankruptcy court, were consolidated by the district court. That June, the district court granted in part and denied in part St. Paul's summary-judgment motion. The court ruled St. Paul proved its case-in-chief, but the Labuzans retained their § 362(k) defense because material issues of fact existed "concerning whether any portion of St. Paul's CTL bond losses was caused by St. Paul's own unlawful conduct". The district court granted St. Paul's summary-judgment motion regarding a number of the Labuzans' affirmative defenses, including failure to mitigate, assumption of risk, estoppel, discharge, and tortious interference with contractual relations.

That August, St. Paul and the Trustee entered into a global resolution of competing claims in CTL's Chapter 7 bankruptcy. Pursuant to the settlement agreement, and in exchange for St. Paul's reducing or waiving its claims against the bankruptcy estate, St. Paul received $600,000 from it. The Trustee also permitted St. Paul to retain certain funds in an amount over $1 million.

The bankruptcy court approved the settlement agreement in November 2007. In its order approving the settlement, the bankruptcy court allowed, *inter alia*, the Labuzans' unsecured claim in the amount of $200,000 against the estate.

Earlier, in September 2007, St. Paul raised in district court whether the Labuzans have standing to pursue a claim under § 362(k) based on St. Paul's claimed violation of the automatic stay created by CTL's bankruptcy. In January 2008, the district court ruled the Labuzans lack standing to assert the § 362(k) claim, based on its ruling that CTL, not the Labuzans, owned that claim against St. Paul. The district court reasoned:

> Assuming that a violation occurred, the [Labuzans] would be required to show that the claim actually belonged to them as indemnitors. And they would have to show that as indemnitors they are the proper parties to bring this suit.
>
> Now, what the evidence shows is that the [Labuzans], while they were . . . owners of CTL, first, they were not creditors of CTL. There were no claims, I believe, made by them against the estate, as I understand it. Additionally, CTL was a separate entity or is a separate entity from the [Labuzans] and, therefore, the [Labuzans] are not and were not the primary owners of any claim that belonged to CTL. Particularly, they were not the owners of the claim that there was a stay violation.
>
> The record shows that CTL resolved its claims against St. Paul and dismissed its adversary proceeding against St. Paul and in that regard, the Court is of the opinion that the [Labuzans] are barred from bringing a claim [on] behalf of CTL, because that would be the way in which it would have to be brought. They have no right to bring a separate and independent claim because the claim does not belong to them.

Transcript of Hearing at 13-14, *St. Paul Fire & Marine Ins. Co. v. Labuzan*, No. H-05-3811 (S.D. Tex. 15 Jan. 2008). The district court stated that, on behalf of

4

a debtor, creditors could seek equitable remedies for § 362(k) violations, but they could not recover damages.

Because the district court's ruling precluded the Labuzans from asserting a § 362(k) claim against St. Paul, the Labuzans abandoned their only affirmative defense: St. Paul's claimed automatic-stay violation. Accordingly, the Labuzans allowed the district court to enter judgment for St. Paul in March 2008 for, *inter alia*, approximately $32 million. The Labuzans' motion for reconsideration was denied.

## II.

A district court's rulings on jurisdictional issues, such as standing, and on questions of statutory interpretations are, of course, reviewed *de novo*. *E.g.*, *Texas v. United States*, 497 F.3d 491, 495 (5th Cir. 2007), *cert. denied*, 129 S. Ct. 32 (2008). "A district court's factual findings, including those on which the court based its legal conclusions, are reviewed for clear error." *Id.*

The automatic-stay provision states, *inter alia*:

[A] petition filed under . . . this title . . . operates as a stay, applicable to all entities, of –
(1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . . , or to recover a claim against the debtor that arose before the commencement of the case under this title;
. . .
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
. . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; [and]

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor . . . .

11 U.S.C. § 362(a). Section 362(k) (formerly § 362(h)) provides in part:

[A]n *individual* injured by any *willful* violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k) (emphasis added).

Our court has held that § 362(k) creates a private remedy for automatic-stay violations. *Pettitt v. Baker*, 876 F.2d 456, 457-58 (5th Cir. 1989) ("We conclude that [§ 362(k)] creates a private remedy for one injured by a willful violation of an automatic stay."). *Pettitt* was decided, however, in the context of a claim by a debtor. *Id.* at 457. In this instance, CTL, not the Labuzans, is the debtor. Along that line, *dicta* in *In re Pointer*, 952 F.2d 82, 86 (5th Cir. 1992), provided: "[I]t seems illogical to conclude that Congress intended to limit § 362[(k)] to debtors when one of the principal purposes behind the automatic stay is to protect creditors from unequal treatment". *Id.* (holding that creditors do not have standing to invoke avoidance powers under 11 U.S.C. § 549).

Accordingly, at issue is whether, pursuant to § 362(k), individuals other than the debtor, who claim injury from an automatic-stay violation, have standing to pursue a claim for resulting damages. Although § 362(k) was added to the Bankruptcy Code in 1984, this issue has not been addressed by many circuits, and it is one of first impression for our court.

6

To establish standing pursuant to § 362(k), the Labuzans are required to meet both constitutional and prudential requirements. *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). For the reasons that follow, they satisfy the requirements for each.

A.

"To meet the [Article III] constitutional standing requirement, a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *Id.* This constitutional requirement is easily satisfied by the Labuzans. Their alleged injuries sustained as a result of CTL's failure to reorganize under Chapter 11 can fairly be traced to St. Paul's claimed violation of the automatic stay by contacting the project owners and instructing them about the consequences of payments to CTL. Further, at least some of the Labuzans' injuries are likely to be redressed by a favorable decision.

B.

"Prudential standing requirements exist in addition to 'the immutable requirements of Article III' as an integral part of 'judicial self-government.'" *Id.* (quoting *ACORN v. Fowler*, 178 F.3d 350, 362 (5th Cir. 1999)). "These judicially created limits concern [(1)] whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, [(2)] whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and [(3)] whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties." *Id.* (citing *ACORN*, 178 F.3d at 363).

The Labuzans claim standing because § 362(k) expressly gives standing to "an individual" injured by St. Paul's claimed automatic-stay violation. Further, they contend they satisfy the prudential requirements because: as creditors and equity holders of CTL, their interests fall within the zone of interests protected by § 362(k); their injury, sustained as a result of the conversion to Chapter 7, was neither abstract nor generalized; and they have shown that their injury is separate and distinct from that sustained by CTL.

St. Paul maintains: the Labuzans lack standing because they do not own the claims they seek to pursue; rather, those claims belong to CTL's bankruptcy estate. St. Paul asserts each item of damages claimed by the Labuzans derives from harm to CTL, with CTL being the primary obligor, and the Labuzans being secondary obligors, and only indirectly results in harm to the Labuzans. Finally, St. Paul raises *res judicata*, based on the Trustee's adversary proceeding against St. Paul "for the very same debt the Labuzans seek to bring" here, and the subsequent settlement reached by the Trustee and St. Paul and approved by the bankruptcy court.

Congress can "modify or even abrogate prudential standing requirements, thus extending standing to the full extent permitted by Article III". *Procter & Gamble*, 242 F.3d at 560. "We therefore look to the statute in question to determine whether Congress expressed an intent to negate the background of prudential standing doctrine." *Id.* (footnote call and internal citations omitted).

1.

Again, § 362(k) provides:

[A]n *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and

attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k) (emphasis added).

The term "individual" is not defined by the Bankruptcy Code, but it is used throughout the Code to refer to debtors and non-debtors. *See Homer Nat'l Bank v. Namie*, 96 B.R. 652, 654 (W.D. La. 1989) (citing, *inter alia*, 11 U.S.C. §§ 522(b) (individual as debtor), 321(a)(1) (individual as trustee), and 1129(a)(5)(A)(i) (individual as "director, officer, or voting trustee of the debtor")). When referring to § 362(k), Collier uses the terms "debtor" and "individual" interchangeably. *See* COLLIER ON BANKRUPTCY ¶ 362.11[3] (15th ed. 2009).

Congress' using the term "individual" in § 362(k) might "lead one to conclude that Congress intended to abrogate the background of prudential standing for purposes of [§ 362(k)] and allow anyone to sue who could achieve Article III standing". *Procter & Gamble*, 242 F.3d at 561. As discussed, however, "individual" is not defined in the Bankruptcy Code. If Congress intended to abrogate the prudential standing requirement by enacting § 362(k), that intent is not expressed clearly. Therefore, we have to ascertain Congress' intent by examining the Code's legislative history. *See id.* at 562. That history for § 362 states in part:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 595, 95th Cong. 1st Sess. (1977), S. Rep. No. 989, 95th Cong. 2d Sess. 49 (1978) (capitalization altered).

9

Undoubtedly, based on the above-referenced language, the term "individual" includes debtors, and our court has so held. *See Pettitt*, 876 F.2d at 457-58. The inquiry, however, does not end here. The relevant part of the legislative history states:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 595, 95th Cong. 1st Sess. (1977), S. Rep. No. 989, 95th Cong. 2d Sess. 49 (1978) (capitalization altered); *see also Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986) ("The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment."); *Namie*, 96 B.R. at 655 (same); *United States v. Miller*, No. 5:02-CV-0168, 2003 WL 23109906, at *7 (N.D. Tex. 22 Dec. 2003) (unpublished) (noting that creditors are "clearly intended to benefit from § 362").

Although, as noted, the authorities on the scope of the term "individual" as used in the Bankruptcy Code are scant, decisions interpreting § 362 in general, and § 362(k) in particular, are nevertheless instructive.

*In re Fuel Oil Supply & Terminaling*, *Inc.*, 30 B.R. 360, 361-62 (N.D. Tex. 1983), involved a bankruptcy-debtor corporation interpleaded by an insurance company in state-court litigation, in violation of the automatic stay. After the debtor removed the matter to bankruptcy court, other parties to the litigation moved for remand, claiming void both the interpleader in violation of the stay and the subsequent removal. *Id.* at 362. The bankruptcy court stated: "The

automatic stay is for the benefit of the debtor and if it chooses to ignore stay violations other parties cannot use such violations to their advantage." *Id.* The action was remanded, however, based on "equitable grounds"—mainly because the bankruptcy court determined that the parties' litigating their state-law claims in state court would not interfere with the debtor's reorganization efforts. *Id.* at 363. *Fuel Oil,* decided in the context of the removal statute, 28 U.S.C. § 1441(c), did not hold that non-debtors lack standing to challenge automatic-stay violations. Further, the decision was rendered before § 362(k) was enacted, and, as such, is inapplicable to whether "individual" in § 362(k) includes non-debtors.

In this regard, a more recent decision is on point. In the earlier-cited *Namie*, 96 B.R. 652, the court held that a corporate creditor had standing to assert an automatic-stay violation by another creditor. *Id.* at 655-66. In *Namie*, owners of a mobile home leased to the debtor seized it after the debtor became delinquent on lease payments. *Id.* at 652. They also sued the debtor in state court. *Id.* The debtor filed for Chapter 7 bankruptcy a few weeks later. *Id.* Although the owners received notice of the debtor's bankruptcy filing, they obtained in state court a default judgment against the debtor several weeks later, and then sold the mobile home at a sheriff's sale. *Id.* at 652-53.

The bankruptcy trustee, with the bankruptcy court's approval, subsequently sold the mobile home to a bank. *Id.* at 653. After the bank was unable to take possession of the mobile home due to the previous sheriff's sale, it filed an adversary proceeding against the subsequent owners of the mobile home. *Id.* In defense, the owners claimed that § 362(k)'s remedies were not available to creditors. *Id.* at 654. The district court disagreed and held that the

11

bank, as an "individual" under § 362(k), had standing to pursue a damages claim against the owners. *Id.* at 655. The court reasoned, *inter alia*:

> If Congress intended to limit the remedies in § 362[(k)] to debtors it could have done so by the simple expedient of replacing the term "individual" with "debtor." Congress chose not to do so, and this court is unwilling to impose limitations not supported by the statutory language, jurisprudence, or legislative history. Moreover, it seems illogical to conclude that Congress intended to limit § 362[(k)] to debtors when one of the principal purposes behind the automatic stay is to protect creditors from unequal treatment.

*Id.* Accordingly, the bankruptcy court's awarding damages and attorney's fees to the bank was affirmed. *Id.* at 656.

In an unpublished decision, the same district court (but a different judge) held the United States, as a creditor, had standing to assert automatic-stay violations under § 362(k). *See Miller*, 2003 WL 23109906, at *10. In *Miller*, the United States made a loan to the debtor to enable it to purchase a house. *Id.* at *1. The loan was secured by a vendor's lien and a deed of trust. *Id.* Subsequently, the United States paid delinquent ad valorem property taxes on the property for the years 1991 through 1994. *Id.* The debtor's ad valorem property taxes for 1995 became due on 1 October. *Id.*

On 2 October 1995, the debtor filed for Chapter 13 bankruptcy. *Id.* In May 1998, a state-court judgment for the 1995-1997 ad valorem taxes was entered against the debtor, and the property was sold at a tax sale that September. *Id.* at *2. After learning of the bankruptcy closing in 2001, the United States filed an action in district court, seeking to have the property transfer declared void as violative of § 362. *Id.* at *5.

The district court concluded that the United States, as a creditor, met both the constitutional and prudential standing requirements to pursue a

12

declaratory-judgment action against the debtor's other creditors, based on their having violated the automatic stay. *Id.* at *10. The court's holding was grounded in its analysis of § 362(k)'s language, the Bankruptcy Code's legislative history and purposes, and this and other circuits' jurisprudence. *Id.* at *6-10. Among other things, the court also noted the consequences of denying creditor standing under § 362:

> First, it would suggest that, where . . . neither the debtor nor the trustee had any economic interest in the subject property (because the debtor has no equity in the property), a creditor could proceed against the property in violation of the stay with impunity because the one party that has an incentive to complain of the violation ([another] creditor whose interest in the property has been harmed) is without standing to call the violation to the court's attention. Second, it creates a facially anomalous result in that, even though a violation of the automatic stay has occurred, and even though the actions . . . are void *ab initio*, a creditor who is adversely affected by that action nevertheless is without standing to seek redress in the very forum established to enforce the statute that created the automatic stay.

*Id.* at *9 (quoting *In re Ring*, 178 B.R. 570, 577 (S.D. Ga. 1995)) (alterations in original).

Bankruptcy and district courts in other circuits have allowed pre-petition creditors' damages claims to proceed, or at least recognized that pre-petition creditors can assert such claims, where automatic-stay violations occur. *See, e.g.*, *In re Winters*, No. 93-7381, 1995 WL 453053, at *6-8 (N.D. Ill. 28 July 1995) (upholding the bankruptcy court's award of damages but not addressing standing); *In re Prairie Trunk Ry.*, 112 B.R. 924, 929 (N.D. Ill. 1990) ("The weight of persuasive case authority is that only a debtor or creditor 'may attack any acts in violation of the automatic stay'".) (quoting *In re Brooks*, 79 B.R. 479,

481 (9th Cir. 1987)); *In re Int'l Forex of Cal.*, 247 B.R. 284, 291 (S.D. Cal. 2000) (expressly finding creditor-standing); *In re Clemmer*, 178 B.R. 160, 165 (E.D. Tenn. 1995) (reserving the issue, but acknowledging the weight of authority supporting creditor-standing).

In claiming lack of standing, St. Paul relies, *inter alia*, on several Ninth Circuit decisions. *In Re Globe Investment & Loan Co.*, 867 F.2d 556, 559 (9th Cir. 1989), addressed whether property owners who filed a proof of claim with a bankruptcy court, and who claimed to be "creditors" of the bankruptcy estate, had standing to challenge a trustee's sale of the property at issue. The court held standing was lacking because, "although it [was] questionable whether creditors of an estate may invoke the protections of section 362", plaintiffs proceeded as owners of the property, rather than as creditors. *Id.* at 559-60 (noting that plaintiffs' "cause of action under section 362 [was] a disingenuous attempt to use the Bankruptcy Code to their advantage"). Therefore, plaintiffs were "outside parties", not entitled to challenge the sale. *Id.* at 560. Accordingly, whether individuals other than debtors, such as creditors, have standing to challenge automatic-stay violations, was not resolved in *Globe Investment*.

*In re Pecan Groves of Arizona*, 951 F.2d 242, 245 (9th Cir. 1991), held "a creditor has no independent standing to appeal an adverse decision regarding a violation of the automatic stay". *Id.* The holding was based on several prior decisions that had concluded § 362 was "intended solely to benefit the debtor estate". *Id.* (citing *In re Brooks*, 871 F.2d 89, 90 (9th Cir. 1989), *In re Stivers*, 31 B.R. 735, 735, 737 (N.D. Cal. 1983), *In re Fuel Oil,* 30 B.R. at 362). The court also reasoned: "Allowing unsecured creditors to pursue claims the trustee

14

abandons could subvert the trustee's powers." *Id.* Again, as in *Globe Investment*, not resolved in *Pecan Grove* was whether creditors could initiate an action based on an automatic-stay violation (as opposed to appealing it where a trustee fails to do so). *See In re Int'l Forex*, 247 B.R. at 291 (noting *In re Pecan Grove*'s holding "has been overstated for the proposition that the automatic stay is solely for the benefit of the debtor, and a creditor cannot have standing under § 362[(k)]").

When the Ninth Circuit confronted whether the term "individual" includes corporate entities, the court stated, without citing to authority: "Normally, pre-petition creditors . . . shall recover damages under 11 U.S.C. §§ 362[(k)] and 1109(b) for willful violations of the automatic stay". *In re Goodman*, 991 F.2d 613, 618 (9th Cir. 1993). (The court proceeded to hold the term "individual" does not include a corporation or other "artificial entit[ies]". *Id.* at 619.)

The Ninth Circuit's position on creditor standing is consistent with our circuit's jurisprudence. It appears that, had the creditor in *Goodman*, who proceeded as creditor, rather than as owner, been a non-corporate entity, the Ninth Circuit would have found standing. In sum, St. Paul's reliance on the above-referenced Ninth Circuit decisions to assert lack of standing is misplaced.

As discussed *supra*, the decisions "favoring creditor standing are often strongly rooted in an analysis of the legislative history of § 362 and the goals of the Bankruptcy Code". *Miller*, 2003 WL 23109906, at *8. Congress' intent to enable pre-petition creditors to assert automatic-stay violations may also be ascertained by reading other provisions of the Bankruptcy Code.

In this instance, the Labuzans claim: due to St. Paul's violating the automatic stay, CTL was unable to reorganize under Chapter 11 and had to

15

convert to Chapter 7. In Chapter 11 matters, in finding creditor-standing, some courts, cited *infra*, relied on 11 U.S.C. § 1109(b). That section states:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a *creditor*, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b) (emphasis added). Regarding such reliance, *see*, *e.g.*, *In re Reserves Dev. Corp.*, 64 B.R. 694, 699-700 (W.D. Mo. 1986) (creditor-standing based on, *inter alia*, § 1109(b)); *In re Int'l Forex*, 247 B.R. at 289 (same); *In re Clemmer*, 178 B.R. at 165 (providing, in *dicta*, that § 1109(b), along with decisions finding creditor standing, supported the proposition that "creditors have standing to challenge automatic stay violations and seek damages under § 362[(k)] in Chapter 7 and 11 cases", but declining to resolve the issue because the automatic-stay violation was challenged by a non-creditor).

When 11 U.S.C. § 1109(b) is read in conjunction with § 362(k), it becomes clear that Congress did not enact § 362(k) solely for the benefit of debtors. Accordingly, based on § 362(k)'s plain language, the above-discussed congressional purpose of § 362(k) to provide both debtor and creditor protection, and the weight of authority finding creditor-standing, we hold debtors and creditors are entities whose grievances fall "within the zone of interests" protected by § 362(k).

### 2.

Because, as noted, the congressional purposes behind § 362(k) were debtor, as well as creditor, protection, the Labuzans, as creditors of CTL, also adequately meet the second prudential concern—"whether the complaint raises

16

abstract questions or a generalized grievance more properly addressed by the legislative branch". *Procter & Gamble*, 242 F.3d at 560.

3.

A less obviously satisfied prudential concern is whether the Labuzans are asserting claims that belong to CTL's bankruptcy estate. In that regard, St. Paul claims that, pursuant to *In re Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994), the estate, rather than the Labuzans, owns the claims they seek to pursue because: the loss in equity alleged by the Labuzans was directly suffered by CTL; the judgments entered against the Labuzans were based on CTL's failure to meet its own obligations; and the tax liens owed by CTL to the IRS are derivative obligations. Regarding the Labuzans' standing as creditors, St. Paul claims the Labuzans do not have standing because they are CTL's unsecured creditors. The Labuzans, on the other hand, claim that *Educators Trust* applies only to pre-petition claims, and is, therefore, inapposite.

We agree with the Labuzans for several reasons. In *Educators Trust*, a group of school districts participated in Educators Group Health Trust to provide health benefits for its teachers. *Id.* at 1283. After Educators Trust filed for Chapter 7 relief, the school districts became creditors of the estate. *Id.* Two years after the filing, the school districts instituted a state-court action against the principals of Educators Trust, asserting, *inter alia*, mismanagement and fraud. *Id.* The trustee intervened in the state-court action, asserting the school districts' claims were instead property of the bankruptcy estate. *Id.* The bankruptcy court agreed. *Id.*

In *Educators Trust*, our court interpreted the 11 U.S.C. § 541(a)(1) property-of-the-estate provision, which provides, in part, that property of the

17

estate includes "all legal or equitable interests of the debtor in property *as of the commencement of the case*". *Id.* (quoting 11 U.S.C. § 541(a)(1)) (emphasis added). In that regard, *Educators Trust* established the following legal framework:

> If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim. If, on the other hand, a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action.
>
> Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. As part of this inquiry, we look at the nature of the injury for which relief is sought. If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate.

*Id.* at 1284 (internal citations omitted). Applying the above-referenced framework to the school districts' claims, our court held that, although some of the claims derived from the injury to the bankruptcy estate, others, such as fraud and negligence claims, belonged solely to the school districts. *Id.* at 1285-86.

Therefore, our inquiry is whether *Educator Trust*'s framework concerning § 541(a)(1) is applicable to claims asserted under § 362(k); we conclude that it is not. At the outset, we note: whether the Trustee had standing to assert an automatic-stay violation claim against St. Paul in bankruptcy court is not before us. As discussed, however, our court has held that debtors have a private action for damages under § 362(k). *See Pettitt*, 876 F.2d at 457-58. Consequently,

assuming the Trustee had standing to assert a § 362(k) claim against St. Paul, that standing was not exclusive.

Further, the earlier-referenced plain language of § 541(a)(1) implies that a § 362(k) claim can never be brought as of *commencement* of the case because, by definition, an automatic-stay violation occurs *post*-filing. Our conclusion that *Educators Trust* is not applicable to § 362(k) claims is further guided by the principle that Congress usually "says in a statute what it means and means in a statute what it says there". *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). Congress could have easily included § 362(k) claims under the "property of the estate" umbrella of § 541. Likewise, if Congress intended to grant the trustee exclusive standing to assert automatic-stay violations, it could have done so by replacing the term "individual" with "trustee". Accordingly, we conclude that § 362(k) automatic-stay-violation claims are not property of the estate as defined in § 541 and *Educators Trust*, at least to the extent they are not asserted by the trustee. (Again, as noted, whether a trustee has standing to pursue § 362(k) claims is not at issue.)

Finally, CTL's possibly being harmed by its inability to reorganize does not mean that no other harm resulted from St. Paul's violating the automatic stay. It is "possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct". *In re Seven Seas Petroleum*, 522 F.3d 575, 585 (5th Cir. 2008). The Labuzans' claims and those of the CTL bankruptcy estate are not mutually exclusive. *See id.* at 587. "[T]here is nothing illogical or contradictory about saying that [St. Paul] might have inflicted direct injuries on both the

19

[Labuzans] and [CTL] during the course of dealings that form the backdrop of both sets of claims". *Id.*

Therefore, based on § 362(k)'s plain language, its legislative history, the Bankruptcy Code's purposes, and the weight of judicial authority, we hold: pursuant to § 362(k), the Labuzans, as *pre-petition creditors* of CTL, have standing to assert a claim against St. Paul. Accordingly, to the extent the Labuzans' claims are based on their status as *owners/equity holders* of CTL, § 362(k) cannot be invoked. Along those lines, we decline to hold, as St. Paul urges, that only secured creditors may challenge automatic-stay violations. Neither the statute, its legislative history, nor the above-cited authority stands for this proposition.

Obviously, because our holding is limited to the issue of standing, we do not consider what, if any, injuries claimed by the Labuzans were sustained in their capacity as CTL's creditors. Neither do we consider the *res judicata* effect, if any, the settlement of the Trustee's claims against St. Paul has on the Labuzans' claims.

III.

For the foregoing reasons, the judgment is VACATED and this matter is REMANDED to district court for further proceedings consistent with this opinion.

VACATED and REMANDED.