# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 17, 2010

No. 09-50553

Lyle W. Cayce
Clerk

COASTAL HABITAT ALLIANCE,

Plaintiff - Appellant

v.

JERRY PATTERSON, In his official capacity as Commissioner of the Texas
General Land Office; CHAIRMAN BARRY SMITHERMAN, In his official
capacity as Commissioner of the Texas Public Utility Commission; JULIE
CARUTHERS PARSLEY, In her official capacity as Commissioner of the
Texas Public Utility Commission; PAUL HUDSON, In his official capacity as
Commissioner of the Texas Public Utility Commission; PATTERN GULF
WIND L.L.C., Wholly owned by Pattern Energy Group, L.P.; PPM ENERGY,
INC.,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-CV-985

Before REAVLEY, PRADO and OWEN, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-50553

This is an appeal from the district court's order dismissing the instant case on the pleadings.  We AFFIRM.

Plaintiff/Appellant Coastal Habitat Alliance ("Alliance") seeks declaratory and injunctive relief against two Texas agencies for failing to perform an environmental consistency review and for not allowing public comment on the private construction of energy-generating wind farms along the Texas Gulf Coast.  The Alliance argues that the agencies agreed to implement these procedures in exchange for federal funding of their state coastal management program ("Texas Program") under to the Coastal Zone Management Act, 16 U.S.C. § 1451, *et seq.*  The Alliance claims that the agencies' failure to implement these procedures violates preemptive federal law under the Supremacy Clause of the Constitution and violates the Alliance's Due Process rights under the Fifth and Fourteenth Amendments.  It also seeks declaratory and injunctive relief against the private developers who are constructing the wind farms.

The district court held that the Alliance lacked standing to bring its preemption claim because it failed to allege that the agencies had caused particularized harm and because the federal program contained no private cause of action.  The district court further held that the Alliance lacked standing for its other claims because the claims lacked redressability.

We review a district court's dismissal on the pleadings for lack of jurisdiction de novo.  *St. Paul Fire & Marine Ins. v. Labuzan*, 579 F.3d 533, 538 (5th Cir. 2009).

The Alliance argues that the district court erred in disregarding what it claims are its "procedural rights" to a consistency review and public comment to challenge the construction of wind farms.  The Alliance concedes that the Texas law requiring a consistency review and public comment was repealed before the federal government approved the Texas Program.  However, the Alliance argues

2

that the repeal of that law is preempted by the Coastal Zone Management Act, because the Texas Program continues to cite to the repealed law.

The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Accordingly, "it is a 'fundamental principle of the Constitution . . . that Congress has the power to preempt state law.'" *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 336 (5th Cir. 2005) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S. Ct. 2288, 2293 (2000)). The Supremacy Clause itself "is not a source of any federal rights." *Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724, 730 (5th Cir. 2009) (quotes and cite omitted). However, this Court has recognized that "there is an implied right of action to enjoin state or local regulation that is preempted by a federal statutory or constitutional provision . . . ." *Sanchez*, 403 F.3d at 334. To establish a preemption claim, we look to see if there is anything in the State law that conflicts with federal law, or if the federal law provides for rights or benefits that the State law unreasonably impedes. *See id.* at 336-37.

The Coastal Zone Management Act specifically disavows any attempt to preempt state law. In 16 U.S.C. § 1456(e)(1), the Act states that "[n]othing in this chapter shall be construed . . . to diminish either Federal or state jurisdiction, responsibility, or rights in the field of planning, development, or control of water resources, submerged lands, or navigable waters . . . ." A review of this language and the Act's statutory history has led the Supreme Court to conclude that "Congress clearly intended the [Act] *not* to be an independent cause of pre-emption except in cases of actual conflict[.]" *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 591, 107 S. Ct. 1419, 1430 (1987) (emphasis in original).

No. 09-50553

As for any "actual conflict," nothing in the Act expressly requires Texas to provide for public participation and consistency reviews in wind farm construction. Rather, the Act generally requires that before receiving approval, the Secretary of the Interior must find the State Program provides for an adequate planning process and general techniques for control of land use involving the construction of energy facilities. *See* 16 U.S.C. § 1455(d)(11). While a state may opt in its program to employ consistency reviews, public hearings, and judicial review of the construction of energy facilities, other techniques may also be employed. *See id.* In the instant case, it was the repealed Texas law, not federal law, which specifically applied these procedures to wind farm construction.

Furthermore, the operative language of the Act is not directed at the States at all. Rather, it is primarily directed at the Secretary and subsidiary agencies, who must confirm that any prospective plan submitted by a State contains certain procedures before the plan may be approved. *See* 16 U.S.C. § 1455(d) ("Before approving a management program submitted by a coastal state, the Secretary shall find the following: . . . ."). Inasmuch as these procedures include those sought by the Alliance, this language has further been interpreted as "focus[ing] on the class of persons on whom a duty is imposed . . . and not on a class of intended beneficiaries . . . ." *New Jersey Dep't of Envtl. Prot. & Energy v. Long Island Power Auth.*, 30 F.3d 403, 422 (3d Cir. 1994) (internal cites and quotes omitted). As the duties outlined in the Act are directed primarily at the Secretary, we do not find that a State's purported failure to comply with the pre-requisites for a plan's approval create an "actual conflict" between State and federal law, giving rise to a private-party preemptive "procedural right" of enforcement.

Indeed, the Act articulates its own method of ensuring a State's continuing compliance with the Act, namely suspension and withdrawal of federal funding.

*See* § 1458 (requiring Secretary to conduct continuing reviews of a state's program and permitting Secretary to suspend financial assistance and withdraw approval of a state's program for noncompliance). Therefore, inasmuch as the Texas program has failed to properly implement its own program, it is the withdrawal of funding, not the recognition of a preemptive "procedural right," that is the Congressionally intended method of ensuring compliance. "It is telling that the Act specifies a mechanism for enforcing the consistency requirement against state and city agencies without mention of any private right of action." *George v. NYC Dep't of City Planning*, 436 F.3d 102, 103 (2d Cir. 2006).[1]

To summarize, we find no basis to recognize preemptive federal "procedural rights" under the Act that would force the Texas agencies to conduct a consistency review and allow for public participation before authorizing the private construction of wind farms. As there are no "procedural rights" in the Act to bestow upon the Alliance, we agree with the district court that the Alliance has failed to demonstrate that it suffered a concrete and particularized legally-cognizable harm. The Alliance has thus failed to establish any standing to prosecute its claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992).

As we find no cognizable claims against the Texas agencies, the Alliance's derivative claims against the private defendants must also fail.

AFFIRMED.

---

[1] The Alliance argues that the Act's lack of a private right of action is irrelevant, because in *Sanchez*, we recognized that there is an implied right of action to enjoin state or local regulations that are preempted by federal law. *See Sanchez*, 403 F.3d at 334. However, this argument misses the point. In *Sanchez*, the plaintiffs sought access to the benefit of federal funding that was being dispensed through a state program. *Id.* at 327. In the instant case, the federal benefit the Alliance seeks is the grant of "procedural rights" to challenge the construction of wind farms. In other words, the benefit the Alliance seeks in the instant case is the "right" itself. However, no such "right" exists under the Act that Texas law is impeding, and therefore the Alliance lacks standing to bring its claims.