# United States Court of Appeals for the Fifth Circuit

———————

No. 24-40612

———————

United States Court of Appeals
Fifth Circuit

**FILED**

April 2, 2026

Lyle W. Cayce
Clerk

Autoficio, L.L.C; Brian Whiteside,

*Plaintiffs—Appellees*,

*versus*

Cimble Corporation; Alvin Allen; Paul Barrett,

*Defendants—Appellants*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:17-CV-404

———————————————————

Before Haynes, Higginson, and Ho, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:[*][1]

Cimble Corporation, Alvin Allen, and Paul Barrett ("Appellants") appeal the amended final judgment of the district court[2] following a jury trial; the denial of their subsequent motion under Fed. R. Civ. P. 59(a) and (e); and

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] Judge Haynes concurs in the judgment only.

[2] By agreement of the parties, all proceedings, including the jury trial were conducted before the magistrate judge; thus, all references in this opinion to the district court refer to decisions of the magistrate judge assigned by the district court.

No. 24-40612

their renewed motion under Fed. R. Civ. P. 50(b). Finding no reversible error by the district court, we AFFIRM.

I

Brian Whiteside[3] sued Cimble, and its shareholders, Allen and Barrett, asserting claims under Texas law for statutory fraud, common law fraud, negligent misrepresentation, and breach of contract with respect to two different contracts. A jury reached a verdict in favor of Whiteside on all claims, and the district court entered a final judgment in favor of Whiteside, which it later amended.

Appellants ask us to reverse the amended final judgment, raising three issues on appeal: 1) whether the district court's determination that Whiteside had standing was erroneous; 2) whether there was sufficient evidence for the jury to find detrimental reliance by Whiteside; and 3) whether the district court erred in its granting Whiteside's motion to exclude from evidence a tape-recording that Appellants contend should have been admitted.

II

We review de novo a district court's rulings on legal questions, including rulings on the issue of standing. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). However, "[a] district court's factual findings, including those on which the court based its legal conclusions, are reviewed for clear error." *Id.* (citation omitted). "A factual finding is not clearly erroneous if it is plausible, considering the record

---

[3] Two entities involved at various points as plaintiffs in this case are not part of the judgments appealed here. Kapexia, LLC, a party to the contracts that Whiteside asserts were breached, was removed as a plaintiff in the Second Amended Complaint, which is the operative complaint before us. Plaintiff Autoficio, LLC was not awarded a judgment.

as a whole." *United States v. Bass*, 996 F.3d 729, 742 (5th Cir. 2021) (quoting *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014)).

"To the extent the defendant challenges the sufficiency of the evidence after a case tried by a jury, our review is 'especially deferential' to the verdict." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 472 (5th Cir. 2015) (citing *Heck v. Triche*, 775 F.3d 265, 272 (5th Cir. 2014)). "In conducting our review, we must draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that we might regard as more reasonable." *Id.* (quoting *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 238 (5th Cir.2014)).

We apply a deferential abuse of discretion standard when reviewing a district court's evidentiary rulings. *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 615 (5th Cir. 2018). "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 233 (5th Cir. 2016) (quoting *Nunez v. Allstate Ins. Co.*, 604 F.3d 842, 844 (5th Cir. 2010)).

## III

We first review Appellants' arguments that Whiteside lacks standing. "Standing jurisprudence contains two strands: Article III [or constitutional] standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 801 (5th Cir. 2012) (cleaned up). A dismissal for lack of constitutional standing should be granted under Rule 12(b)(1) for lack of subject matter jurisdiction, whereas a dismissal for lack of prudential standing should be granted under Rule

12(b)(6) for failure to state a claim. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury in fact" which is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Id.* Second, the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 561 (cleaned up). The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

"Prudential standing requirements exist in addition to the immutable requirements of Article III as an integral part of judicial self-government." *Superior MRI*, 778 F.3d at 504 (quoting *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009)). One principle of prudential standing requires "that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* (quoting *United States v. Johnson*, 632 F.3d 912, 919–20 (5th Cir. 2011)).

Both before and after trial, Appellants argued at various times that Whiteside lacked standing, capacity, or privity. The district court determined that Appellants' arguments were with respect to contractual or prudential standing and thus conducted its analysis under Fed. R. Civ. P. 12(b)(6). Appellants argue the district court erred by concluding that the issue was one of contractual standing; they assert Whiteside lacks constitutional standing because Kapexia, not Whitehead, was the injured party. Appellants also argue that, even if the district court was correct in concluding contractual

capacity is concerned here, the district court still erred because Whitehead lacks contractual capacity as well.

Some background is required. Former plaintiff Kapexia[4] entered into two contracts with Cimble: A Share Purchase and Option Agreement ("SPA") that sold a 7.14% interest in Cimble to Kapexia for $300,000, and a Memorandum of Understanding regarding a line of credit that obligated Kapexia to loan $125,000 to Cimble ("MOU"). Whiteside signed both contracts on behalf of Kapexia. The parties jointly stipulated at trial that two payments, the $300,000 paid on behalf of Kapexia under the SPA and $25,000 of the loan under the MOU, were wired to Cimble directly from Whiteside's personal bank account. The remaining loan payments totaling $100,000 were made by Autocifio, a limited liability company in which Whiteside is the sole member.

As the Supreme Court has acknowledged, the line between Article III standing and so-called prudential standing is not always clearly delineated: "The limitations on third-party standing are harder to classify; we have observed that third-party standing is closely related to the question whether a person in the litigant's position will have a right of action on the claim, but most of our cases have not framed the inquiry in that way." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) (internal quotations and citations omitted). But, the pocketbook injury Whiteside has shown is sufficient to confer constitutional standing under the criteria set forth in *Lujan*.

---

[4] It appears that Kapexia was removed as a plaintiff because in earlier proceedings there was a disputed issue as to whether diversity was destroyed by the residency of one of its members.

Appellants also argue that Whiteside has no contractual standing because he was not a party to either contract. Whiteside acknowledges the general rule that "one who contracts as an agent cannot maintain an action in his own name and right upon the contract," but relies on the *Tinsley* exceptions under Texas law. *Tinsley v. Dowell*, 26 S.W. 946, 948 (Tex. 1894). We have recognized the *Tinsley* exceptions before. In *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250 (5th Cir. 1980), we noted the circumstances in which Texas courts expressly recognize an agent's right to sue for the purchase price on a contract in his own name by virtue of his status as a party promise on the contract. *Id.* at 259. Finding no Texas authority expressly confirming that right, we noted the circumstances in which the courts of Texas expressly recognized an agent's right to sue in his own name—

> (1) where he has contracted in his own name, (2) where his principal is undisclosed, (3) where, "by the usages of trade," he is authorized to act as the owner of the property, or (4) where he has an interest in the subject matter of the contract.

*Id.* We then determined that the feedlots fell under the third *Tinsley* exception, as agents authorized to act as the owner of the property by custom or usage of the trade involved, and that the feedlots were entitled to sue in their own names to enforce the contracts made on behalf of their principals. *Id.* at 260 (citing 3 Tex.Jur.3d, Agency § 157 (1980).

Appellants distinguish *Lubbock Feed Lots,* arguing that there was no agreement or assignment between Whiteside and Kapexia allowing Whiteside to collect under the agreement in his own name. But Whiteside does not argue that he falls under the third exception to *Tinsley.*

Whiteside argues that he has standing under the fourth *Tinsley* exception. Whiteside says he has an interest in the subject matter of the contract on account of his payment of personal funds to Cimble, citing to

Texas case law finding that plaintiffs who have individually made contractual payments on behalf of the contracting entity have an interest in the subject matter of the contract. *Perry v. Breland*, 16 S.W. 3d 182, 187-188 (Tex. App.-Eastland 2000, pet. denied).

Appellants do not refute that Whiteside paid Cimble directly or attempt to explain how Whiteside's direct payment with personal funds prevents him from falling within the exception set forth in *Perry*. Rather, Appellants argue that under the terms of the SPA and the MOU, Kapexia, and not Whiteside, are the Purchaser and the Lender. Appellants also argue that the SPA contains no provision that "identifies that the subject matter of the contract resides – and the interest in the subject matter of the contract reside[s]" in Whiteside's individual capacity.

Appellants further rely on cases involving shareholders attempting to sue on behalf of companies for transactions in which payments were made with funds owned by the company, not the individual.[5] *See, e.g.*, *Sherman v. Boston*, 486 S.W.3d 88, 95 (Tex. App.–Houston [14th Dist.] 2016, pet. denied) (dismissing member's conversion claim for lack of standing where checks allegedly converted were payable to and property of limited liability company and not individual member); *Lin v. Veritex Cmty. Bank, N.A.*, No. CV H-20-1904, 2022 WL 510483, at *5–6 (S.D. Tex. Feb. 21, 2022) (analyzing standing under a line of cases examining suits brought "for the benefit of the partnership and other partners" and finding no standing where investor could not point to evidence that he, rather than the partnership, owned the funds in dispute).

---

[5] Appellants also mischaracterize Whiteside's argument: "On page 10 of his [brief], Whiteside argues that he suffered an 'injury' by investing in Kapexia." But the citation in Whiteside's brief is to the trial transcript where Whiteside describes his investment in *Cimble*, not Kapexia.

None of Appellants' arguments squarely address Whiteside's reliance on *Perry* and the other Texas cases that hold a direct payment by an individual can give that individual an interest in the subject matter of the contract where an affiliated entity is the party to the contract.[6] *See Handwerker Hren Legal Search, Inc. v. Recruiting Partners GP, Inc.*, No. 03-13-00239-CV, 2015 WL 4999054, at *3 (Tex. App.–Austin Aug. 19, 2015) (citing *Perry* for proposition that "agent who contributed to payment on contract had interest in subject matter of contract"); *Okland v. Travelocity.com, Inc.*, No. 2-08-260-CV, 2009 WL 1740076 at *6, (Tex.App.-Fort Worth June 18, 2009) (distinguishing *Perry* because plaintiff did not personally pay for the bookings that were the subject of the breach of contract suit); *see also Kakabadze v. M5 Int'l Co.*, No.Civ.A.H-12-3701, 2014 WL 2547767, at *3–4 (S.D. Tex. June 5, 2014) (plaintiff had standing to assert his claims because he had an interest in the subject matter of the contract though payment of purchase price with his personal funds).

We agree that because he made payment on the contracts with his personal funds, Whiteside has contractual standing under *Perry*.

IV

Having determined that Whiteside has standing, we now turn to Appellants' argument that the record does not contain sufficient evidence to support the jury's conclusion that Whiteside justifiably relied on the representations of Appellants.

---

[6] Appellants cite no negative authority calling *Perry* into question, and indeed the Texas treatises cite *Perry* with approval. 3 Tex. Jur. 3d Agency § 212 ("where an agent personally has an interest in the subject matter of a contract made for the benefit of the agent's principal, the agent may prosecute a lawsuit on the contract in their own right"); § 2. Plaintiff's elements, O'Connor's Texas Causes of Action Ch. 5-B § 2 (2026 ed.) ("an agent can sometimes sue for breach of contract on behalf of its principal").

Under Texas law, "both fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). In measuring justifiability, we must inquire whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud, it is extremely unlikely that there is actual reliance on the plaintiff's part." *Id.* (quoting *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1026 (5th Cir. 1990)). Moreover, "a person may not justifiably rely on a representation if 'there are "red flags" indicating such reliance is unwarranted.'" *Id.* (quoting *Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003)).

Here, Appellants challenge only the justifiable reliance element of these claims, as applied to specific "red flags." To determine whether a party meets the "justifiable" prong of the justifiable reliance element, we consider "the entirety of the circumstances," *Est. of Ewers*, 695 S.W.3d 603, 637 (Tex. App. —Houston [1st Dist.] 2024), reh'g granted (Jan. 30, 2024), including "the nature of the relationship and the contract" between the parties, *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App.— Dallas 2012, no pet.). "In an arm's-length transaction, each party must exercise reasonable diligence to protect his own interests; a party may not justifiably rely on 'mere confidence in the honesty and integrity of the other party.'" *Est. of Ewers*, 695 S.W.3d at 637 (quoting *JP Morgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 654 (Tex. 2018)). Reasonable diligence equates to "ordinary care for the protection" of a party's own interests. *AKB Hendrick*, 380 S.W.3d at 232.

Here again, some background information is helpful to understanding the parties' arguments. Under the SPA and the MOU, Cimble was supposed to develop a product for Kapexia. The product involved a device with software capable of interacting with the computers in automobiles and

determining what was wrong with the vehicle without needing to take the vehicle to a dealership to be diagnosed.

Appellants argue that, in an arms' length transaction such as this, Whiteside, an experienced investor, cannot justifiably rely on "Allen's and/or Barrett's honesty and integrity," citing to *Orca Assets*, 546 S.W.3d at 654. They assert that Whiteside's decision to proceed with the transaction, even though "he did not receive all of the financial and other information he initially requested," is "not sufficient, as a matter of law, to meet the required element of justifiable reliance." Appellants also assert that "a person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted." In support of their argument, Appellants list several points of evidence that they contend constitute "red flags," such that there is no support for the jury's finding of justifiable reliance.

Appellants give no record citations to any of their purported supporting evidence in their opening brief. They provide one citation to support their contention that the Cimble stock "belongs to Kapexia." While this may be relevant to the standing argument, Appellants do not explain how it contradicts the jury verdict with respect to justifiable reliance. Further, we note that much of Appellants' purported "evidence" seems to be argument rather than actual trial evidence.

"A party may forfeit an argument through inadequate briefing in several ways, such as by failing to offer any citation to authority or by failing to offer record citations." *Schnell v. State Farm Lloyds*, 98 F.4th 150, 161 (5th Cir. 2024) (cleaned up). Rule 28(a) of the Federal Rules of Appellate Procedure requires an appellant to set forth his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). Likewise, our local

rules require "[e]very assertion in briefs regarding matter in the record [to] be supported by a reference to the page number of the original record, whether in paper or electronic form, where the matter is found using the record citation form as directed by the Clerk of Court." 5th Cir. R. 28.2.2; *Arredondo v. Univ. of Tex. Med. Branch at Galveston*, 950 F.3d 294, 298 (5th Cir. 2020).

Responding to Appellants' unsupported arguments, Whiteside argues that he did not simply rely on Appellants' honesty and integrity. Whiteside points to evidence heard by the jury showing that he relied on the representation that Barrett, Cimble's Chief Operating Officer, had financial acumen and experience working with other software companies developing similar software; that he requested financial information, some of which was produced and some of which was unavailable; that he focused his diligence on issues of intellectual property, patents, and Appellants' experience in developing devices; and his understanding that a low cash balance in the company's bank account was not necessarily representative of the financial condition of a small company like Cimble.

Appellants, in their reply, do not address these arguments and instead make an entirely new argument that statements of alleged estimation of value cannot be the basis for justifiable reliance, citing *Zar v. Omni Indus., Inc.*, 813 F.2d 689, 693 (5th Cir. 1987). Because Appellants waited until their reply brief to raise this argument, they have forfeited it. *Hernandez v. United States*, 888 F.3d 219, 224 n.1 (5th Cir. 2018) (citing *Lockett v. EPA*, 319 F.3d 678, 684 n.16 (5th Cir. 2003)). Also in their reply, Appellants provide record citations to the evidence they claim supports their position. But, problematically, it is a different set of "evidence" than was set forth in the opening brief.

Appellants have forfeited their argument on this issue, due to both their failure to provide record citations in their opening brief, and their failure

to raise certain arguments until the reply brief. Further, Whiteside has provided record citations to evidence that supports his argument that he exercised reasonable diligence and ordinary care in his dealings with Appellants. Because a sufficiency of evidence challenge after a jury trial requires us to be "especially deferential" to the verdict, *McCaig*, 788 F.3d at 472, Appellants have not met their burden. Accordingly, we will not disturb the jury's verdict that Whiteside has shown justifiable reliance.

V

Finally, Appellants contend that the district court abused its discretion by excluding from evidence their exhibits 81 and 82. Exhibit 81 was a tape-recording that Appellants contend was material, such that their substantial rights were prejudiced by the exclusion. Exhibit 82 was a transcript of the recording.

The court held a pre-trial hearing on Whiteside's motion to exclude the tape recording and the transcript of the recording. The recording was a telephone conversation between Appellants Allen and Barrett, and non-parties Trevor Zink and Joe Perez. After allowing additional briefing on the arguments of the parties, the district court orally ruled that it would exclude the transcript. The court did not give reasons for its decision, but it did state that, in the event the transcript was needed as impeachment evidence, it could be used.

This court reviews evidentiary rulings for abuse of discretion. *Gabriel v. City of Plano,* 202 F.3d 741, 745 (5th Cir. 2000). "[A] trial court has broad discretion in determining the admissibility of evidence based on relevance and materiality, and that determination will be overturned only when the abuse of that discretion is *clearly* shown from the record." *U.S. Bank Nat'l. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 430 (5th Cir. 2014), *as revised* (Sept. 2, 2014) (emphasis in original) (quoting *United States*

*v. Collins*, 690 F.2d 431, 438 (5th Cir. 1982)). If the district court has abused its discretion in excluding or admitting evidence, "[w]e reverse judgments for improper evidentiary rulings only where the challenged ruling affects a substantial right of a party. The burden of proving substantial prejudice lies with the party asserting error." *Gabriel,* 202 F.3d at 745 (internal quotation marks and citations omitted); *see also First Nat'l Bank of Louisville v. Lustig,* 96 F.3d 1554, 1574 (5th Cir. 1996). A ruling has affected the substantial rights of the party if, when considering all of the evidence presented at trial, the ruling had a substantial effect on the outcome of the trial. *U.S. Bank*, 761 F.3d at 430 (citing *United States v. Limones,* 8 F.3d 1004, 1008 (5th Cir. 1993)). However, if the error was harmless, it will be excused. *Id.*

Appellants' argument primarily rehashes the arguments made to the district court on the motion to exclude the evidence. Even if we assume that the court abused its discretion, Appellants do not carry their burden to show their substantial rights were affected, or that the error was not harmless. Appellants only state in a conclusory fashion that the recording would have "resolved the alleged he said/she said contention." Appellants have the burden to point to some part of the record to show the ruling had a substantial effect on the trial, and they have not. Further, the district court stated in its ruling that the transcript could be allowed for impeachment purposes, which defeats Appellants' argument that the recording of the call would have resolved testimony that contradicted its participants' statements.

Finding no effect on Appellants' substantial rights, we do not disturb the evidentiary ruling of the district court in excluding exhibits 81 and 82.

## VI

Finding no reversible error, we AFFIRM the amended final judgment of the district court in all respects.