# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 18, 2015

Lyle W. Cayce
Clerk

No. 14-60087

———

SUPERIOR MRI SERVICES, INCORPORATED; SUPERIOR MRI SERVICES, INCORPORATED, as Successor in Interest of P & L Contracting, Incorporated,

Plaintiffs – Appellants,

v.

ALLIANCE HEALTHCARE SERVICES, INCORPORATED, formerly known as Alliance Imaging, Incorporated, doing business as Alliance Imaging; ALLIANCE IMAGING, INCORPORATED; JOHN DOE, Defendants I Through X,

Defendants – Appellees.

———

Appeal from the United States District Court
for the Northern District of Mississippi

———

Before REAVLEY, JONES, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Superior MRI Services, Inc. (Superior), on behalf of itself and as successor-in-interest to P&L Contracting, Inc. (P&L), sued Alliance HealthCare Services, Inc. (Alliance), alleging, *inter alia*, tortious interference with business relations and tortious interference with contract. Superior's claims arise from contractual rights that Superior allegedly acquired from P&L, its purported predecessor-in-interest. The district court dismissed

No. 14-60087

Superior's tortious interference claims, ruling that Superior failed to establish that it acquired those contractual rights from P&L and that Superior lacked prudential standing to enforce P&L's rights.[1]   Because we agree that Superior failed to prove the existence of prudential standing by a preponderance of the evidence, we affirm.

## I.

P&L incorporated in October 2006 and, while it was in operation, offered mobile MRI services to Mississippi hospitals.  On January 19, 2012, P&L filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of Mississippi.  In the schedule of assignments contained in its bankruptcy petition, P&L listed an assignment of "MRI Service agreements" to Superior with a date of assignment of October 1, 2011.  Almost two months after this purported assignment, on November 28, 2011, Superior filed its Articles of Incorporation with the Mississippi Secretary of State.  P&L formally dissolved on November 15, 2012. Superior's complaint describes three incidents in which Alliance allegedly interfered with MRI Service agreements or impaired a prospective business relationship.  Each of these incidents occurred prior to the date on which Superior filed its articles of incorporation.

## II.

We review *de novo* a district court's rulings on the issue of standing. *St. Paul Fire & Marine Ins. Co. v. Labuzan,* 579 F.3d 533, 538 (5th Cir. 2009). "A district court's factual findings, including those on which the court based its legal conclusions, are reviewed for clear error."  *Id.*

---

[1] The district court also dismissed Superior's claims alleging violations of the Federal Trade Commission Act and Mississippi's Certificate of Need regulations.  Superior does not appear to challenge the dismissal of those claims and, in any event, we find no error.

2

No. 14-60087

### III.

"Prudential standing requirements exist in addition to the immutable requirements of Article III as an integral part of judicial self-government." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (internal quotation marks omitted).  One principle of prudential standing requires "that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *United States v. Johnson*, 632 F.3d 912, 919–20 (5th Cir. 2011) (internal quotation marks omitted).

A motion to dismiss for lack of standing may be either "facial" or "factual."  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  An attack is "factual" rather than "facial" if the defendant "submits affidavits, testimony, or other evidentiary materials."  *Id.*  To defeat a factual attack, a plaintiff "must prove the existence of subject-matter jurisdiction by a preponderance of the evidence" and is "obliged to submit facts through some evidentiary method to sustain his burden of proof."  *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (internal quotation marks and footnotes omitted), *aff'd sub nom. Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990).

In the district court, Alliance brought a factual attack on Superior's prudential standing, submitting records from the Office of the Mississippi Secretary of State, the Mississippi State Department of Health, the United States Bankruptcy Court, and the Department of the Treasury.  The district court reviewed these submissions and other documents in the public record, and the district court ruled that Superior failed to establish that P&L assigned its contractual rights to Superior or that Superior ratified any such assignment.  According to the district court, P&L's bankruptcy filings list an October 2011 assignment of "MRI service agreements" to Superior, but Superior did not file its Articles of Incorporation with the Mississippi

No. 14-60087

Secretary of State until November 28, 2011. Thus, the district court found that Superior did not exist as a corporation at the time of the purported assignment from P&L. *See* Miss. Code Ann. § 79-4-2.03(a) ("[T]he corporate existence begins when the articles of incorporation are filed."). The district court rejected Superior's contentions that P&L and Superior "merged" or that Superior ratified the assignment after incorporation.

On appeal, Superior argues that the assignment was valid and that Superior ratified the assignment once it "finalized its incorporation process." Superior fails to support either assertion. With respect to the assignment, Superior did not proffer any evidence of an assignment other than the statement in P&L's bankruptcy petition that P&L had previously assigned "MRI Service agreements" to Superior MRI Services. Superior did not produce any assignment agreement or any document memorializing an assignment. Even if the statement in the bankruptcy petition sufficed to prove an assignment of some kind, the vague statement that "MRI Service agreements" were assigned does not establish that the particular agreements at issue in this case are among those that were assigned. Moreover, each of the contracts on which Superior's claims are predicated contains language prohibiting any assignment by P&L without the written consent of the contracting hospitals. Superior submitted no evidence that the contracting hospitals consented to any assignment.

Even if P&L did attempt to assign its rights to Superior, we find no clear error in the district court's finding that the purported assignment took place before Superior existed as a corporation.[2] Thus, Superior would have

---

[2] Plaintiff points out two misstatements in the district court's opinion. First, the district court stated that Superior was not in existence at the time P&L "dissolved." Superior was in existence when P&L dissolved, but it was not in existence when P&L purportedly assigned contracts to it. Second, the district court stated that Superior "has not put forth any allegations or facts *rebutting* that they are indeed a successor in interest

4

had to ratify the assignment once Superior finalized the incorporation process. *See Pearl Realty Co. v. Wells*, 164 Miss. 300, 145 So. 102, 103 (1933) ("It is permissible for promoters to make contracts which, if ratified by corporations after they are organized, will bind the corporations."). Superior proffered evidence that it had a federal tax identification number and bank account as early as September 20, 2011, and it claims that it was doing business as Superior MRI Services before it "finalized its incorporation process." However, Superior does not cite any evidence that it ratified the purported assignment after incorporation. Superior also claims that the Mississippi State Board of Health "authorized and approved the merger of [P&L's] vendor route into [Superior's]," but Superior offers no authority for the proposition that the Board of Health's approval of a vendor route merger is evidence of a ratified contractual assignment.[3]

Superior also argues that the recent Supreme Court case of *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), prevents this court form applying the prudential standing doctrine as a jurisdictional bar. In *Lexmark*, the Supreme Court addressed a different type of prudential standing requirement than that at issue here: "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." 134 S. Ct. at 1386 (internal quotation marks omitted). Although the Supreme Court had previously referred to this zone-of-interests inquiry as one of prudential standing, the *Lexmark* Court clarified that the

---

to P&L." The context makes clear that the inclusion of the word "rebutting" was a mistake. Neither misstatement affects the outcome of the case.

[3] We express no opinion on the merits of the case or the adequacy of the pleadings under *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). We also express no opinion on whether Superior should be permitted to amend its complaint or whether P&L's bankruptcy trustee may be entitled to assert the claims for which Superior lacks standing.

zone-of-interests inquiry is properly viewed as one of statutory interpretation: "Whether a plaintiff comes within the zone of interests is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 1387 (internal quotation marks omitted). Because the *Lexmark* holding deals only with the zone-of-interests test and not with the requirement that a party assert its own rights, *Lexmark* does not control here. To be sure, *Lexmark* does note that prudential standing doctrine as a whole "is in some tension with . . . the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Id.* at 1386 (internal quotation marks omitted). However, we have long applied the prudential requirement that a party must assert its own rights, *see, e.g.*, *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011), and we are bound to follow our precedent until the Supreme Court squarely holds to the contrary, *see Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 394 (5th Cir. 2014).

AFFIRMED.