# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 17-10632

———————

THREE EXPO EVENTS, L.L.C.,

   Plaintiff - Appellant

v.

CITY OF DALLAS, TEXAS,

   Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

October 24, 2018

Lyle W. Cayce
Clerk

———————

Appeal from the United States District Court
for the Northern District of Texas

———————

Before JOLLY, DENNIS, and ELROD, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Plaintiff, Three Expo Events, L.L.C. (Three Expo), is a Texas limited liability company engaged in the business of producing and presenting adult love- and sex-themed conventions in major cities of the nation. After staging such an event in the City of Dallas's Convention Center in August 2015 (Exxxotica 2015), the City and Three Expo informally agreed to a second convention (Exxxotica 2016) to be held at the Convention Center on May 20-21, 2016.

Though well attended and successful economically, the 2015 event, which featured near nudity and sexually suggestive activities, drew opposition from some citizens on moral and civic grounds. Protesters gathered in the Convention Center lobby during the event, and several organizations

reportedly asked Dallas's mayor to keep Exxxotica out of the Convention Center. The mayor publicly acknowledged that he was concerned about the City providing a forum for the event, but he and other city officials took the position at that time that the City could not legally and constitutionally deny use of the Convention Center to a group based on the content of its speech or expression. Consequently, the City and Three Expo proceeded to correspond and make plans for the proposed Exxxotica 2016.

Three Expo followed its usual method of operations in effectuating Exxxotica 2015 and planned to do so again with respect to the 2016 convention: Three Expo, as producer, presenter, and manager of the convention events, paid the expenses of staging a convention and likewise received a large share of its revenues. For its own business reasons, however, Three Expo formed a subsidiary "ownership entity" in each city where it brought its Exxxotica convention (e.g., Exotica Chicago, LLC; Exotica Miami, LLC; etc.). Three Expo would then have the ownership entity enter and hold the lease of the public facility for the purpose of the convention. In keeping with this standard practice, Three Expo planned to have its ownership entity, Exotica Dallas LLC, enter the lease contract with the City to stage Exxxotica 2016 at the Convention Center.

The record reflects that, as is true of Three Expo's other ownership entities, Exotica Dallas LLC is not an independent third party free of control by Three Expo—to the contrary, Exotica Dallas LLC was created by a member of Three Expo for the purpose of entering a lease with the venue for Three Expo's production and presentation of Exxxotica 2016 in Dallas. Moreover, Exotica Dallas LLC is bound by a Management and Services Agreement it entered with Three Expo wherein Exotica Dallas LLC appointed Three Expo as its agent with authority to enter into contracts in its behalf. The agreement authorizes Three Expo to "deal with[] any of the business and government

No. 17-10632

contracts of [Exotica Dallas LLC] for all purposes, and to do, at Three Expo Events' option, all acts and things that Three Expo Events deems necessary in furtherance of the [Exxxotica events]." Thus, Exotica Dallas LLC is totally integrated with and under the control and domination of Three Expo.

On January 19, 2016, the Convention Center advised Three Expo that it was in the process of drafting a contract for Exxxotica 2016. Indeed, a draft lease contract for the 2016 event was prepared by Convention Center staff. However, in early February 2016, Dallas's mayor advised the media that the he did not want the Exxxotica event to return to the Convention Center in 2016, reiterating the sentiments he expressed about the event in 2015. On February 3, 2016, the Dallas City Council, along with City Attorneys, Dallas police officers, and a representative from the Convention Center, held a private executive session concerning Exxxotica. After the meeting, the Convention Center's executive director for convention and event services, Ronald King, advised his employees to "wait" for "further information" before formally booking Exxxotica 2016. Three days later, news broke that the mayor was "trying to stop [Exxxotica] from coming to downtown Dallas."

Indeed, the mayor directed the City Attorney to draft a resolution prohibiting the City Manager from entering into a contract with Three Expo for use of the Convention Center. He acknowledged publicly his belief that the Convention Center was not the place for "the business of sex and sexual products." The mayor also said that he was contacted by "dozens of citizens" about the event. One City Council member said she "might support the ban" of Exxxotica 2016 and that she "[didn't] like them being here." On February 6, one of downtown Dallas's most high-profile property owners emailed the City Council urging it to vote to prohibit Exxxotica 2016, saying he believed it "constitute[d] an activity that runs totally counter to the values, mores[,] and beliefs of the vast majority of the citizens of the City of Dallas" and that the

3

No. 17-10632

city's Convention Center was not "the proper venue" for the event. Some prominent women's organizations also publicly opposed the event.

On February 10, 2016, the City Council met to discuss whether to adopt the resolution banning Exxxotica 2016 from the Convention Center as requested by the mayor. The news reports of the controversy stirred up much public debate. At the meeting, only one speaker—Jeffrey Handy, one of Three Expo's two governing members—spoke in support of Exxxotica 2016. The other eighteen speakers, including local religious and business leaders, spoke in opposition to allowing the event to be held at the Convention Center. Many City Council members voiced their opposition to the event as well, with one equating it to "the unbridled right to allow pornography to be displayed in a public facility," and another saying she "will always say no when it comes to this type of event in the City of Dallas." Other City Council members were more hesitant because the City Attorney advised that the resolution prohibiting Exxxotica 2016 might not pass constitutional muster. From their speeches and remarks at the meeting, it was evident that the mayor and a majority of the City Council clearly understood and intended that passage of the resolution would prevent Exxxotica 2016 from being held at the Convention Center.

At the meeting, the City Council adopted Resolution No. 160308, which stated:

> WHEREAS, Three Expo Events, LLC requests to contract with the City to hold a three-day adult entertainment expo at the Dallas Convention Center; Now, Therefore,
>
> BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS:
>
> Section 1. That the City Council directs the City Manager to not enter into a contract with Three Expo Events, LLC, for the lease of the Dallas Convention Center.

4

Section 2. That this resolution shall take effect immediately from and after its passage in accordance with the provisions of the Charter of the City of Dallas, and it is accordingly so resolved.

Ronald King, the executive director for convention and event services for the Convention Center, testified that he understood that the resolution "would prohibit [him] from entering into a contract that would allow for" the event to return. John Johnson, the assistant director for the City's convention and event services, testified that he was "shocked" by "the vote of City Council to prohibit the [event]," and he understood the resolution to mean he was "no longer authorized to enter into a contract to book" Exxxotica 2016.

On February 24, 2016, Three Expo filed suit against the City in federal court and sought a preliminary injunction to prevent the City from enforcing the resolution. The district court denied Three Expo's motion for a preliminary injunction, and no Exxxotica event took place in Dallas in 2016.

After the denial of the injunction, Three Expo amended its complaint, alleging that the City's actions and resolution in denying Exxxotica 2016 access to the Convention Center violated the First Amendment, the Equal Protection Clause, and the Bill of Attainder Clause of the United States Constitution. After discovery, the City filed a motion to dismiss for lack of jurisdiction, contending that Three Expo lacked standing to bring suit. The district court granted the City's motion, holding that Three Expo lacked Article III standing. Three Expo appealed.

We REVERSE. The district court's decision that Three Expo lacked standing was based on: (1) clear errors in the district court's factual findings; and (2) the district court's manifest failure to apply the well-established principles of law governing Article III standing to the entire evidence of record in this case.

No. 17-10632

## I.

The district court's findings of fact "must not be set aside unless clearly erroneous." FED. R. CIV. P. 52(a)(6). "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

In the district court, the City contended that Three Expo failed to establish standing, basing its argument almost entirely on the wording of the City Council's resolution and an inference from Three Expo's past business practice. In disregard of the evidence fully describing the circumstances surrounding the actions of the mayor, the City Council members, and the aroused citizens, taken to ban Exxxotica 2016 from the Convention Center, the City glibly argued that "the Resolution did not cause Three Expo to suffer an injury in fact" because the resolution prohibited *only Three Expo* from contracting with the City Manager, and Three Expo had planned to follow its usual practice of having its subsidiary entity, Exotica Dallas LLC, enter and hold the lease of the Convention Center for Exxxotica 2016. The district court readily and uncritically accepted the City's argument, erroneously found facts mirroring that argument, and dismissed Three Expo's lawsuit for lack of standing.

We disagree. On the entire evidence, we are left with the "definite and firm conviction" that clear mistakes of facts were committed by the district court. *See U.S. Gypsum Co.*, 333 U.S. at 395. The evidence is overwhelming that the mayor and the Council, responding to what they perceived as a growing public outcry, and after a heated debate about whether to ban Exxxotica 2016 from the Convention Center, adopted the resolution as part of their effort and intention to foreclose Three Expo or anyone else from staging the Exxxotica convention in the Convention Center in 2016. Although they

intended to prohibit Exxxotica 2016 under any circumstance, the resolution, as drafted, literally prohibited the City Manager from entering such a contract *only* with Three Expo.  However, no reasonable factfinder can read the record of the events leading up to and during the City Council meeting without finding that the mayor and City Council firmly intended to make certain that the Exxxotica convention would not be staged by *anyone* in the Convention Center in 2016.  Thus, a realistic sense of the purpose and effect of the resolution in this context was that Three Expo, the undisputed promoter and proposed presenter of Exxxotica 2016, was banned from presenting Exxxotica 2016 at the Dallas Convention Center under any guise or circumstance.

On the entire evidence, we conclude that the district court was clearly mistaken in finding that the City or one of its officers would have entered a contract with Exotica Dallas LLC to use the Convention Center for Exxxotica 2016.  The mayor and the City Council made clear at the City Council meeting their firm and deliberate decision to exclude Exxxotica 2016 from the Convention Center under any circumstance and regardless of the legal consequences.  There is nothing in the evidence to suggest that after so affirmatively barring Exxxotica 2016 from the Convention Center that the City would have allowed one of its officers to lease the facility to Exotica Dallas LLC for the purpose of staging Exxxotica 2016.  The mayor and City Council yielded to what they perceived to be overwhelming public opinion against allowing Exxxotica 2016 to be presented in the Convention Center.  Consequently, it would have been a vain and futile exercise for Three Expo to attempt to persuade the City or the City Manager to enter into such a contract with Exotica Dallas LLC that would have permitted Exxxotica 2016 to be staged in the Convention Center.  *See Ellison v. Connor*, 153 F.3d 247, 254-55 (5th Cir. 1998) (declining to require parties to request a permit when request would be futile because agency had already stated that it would not grant one).  We

No. 17-10632

recognized the futility doctrine in *Moore v. U.S. Department of Agriculture* where we found that farmers had standing to challenge the Farmers Home Administration's (FMHA) rejection of their application to participate in a sale though the plaintiffs never submitted complete applications.  993 F.2d 1222, 1222-24 (5th Cir. 1993).  Though the plaintiffs "could never have qualified for the FMHA program" because their applications were incomplete, we found that submitting a completed application would have been futile because plaintiffs were told by the organization that the FMHA would not consider their application.  *Id.*  The district court's finding that the mayor or the City Council or anyone acting for the City would have allowed Exotica Dallas LLC to lease the Convention Center for Exxxotica 2016 was clearly erroneous and must be set aside.

Also, the district court's clearly erroneous factual findings that Three Expo's injuries were not caused by the City's actions were based on the City's highly convoluted and meritless argument.  The City maintained that

> [Three Expo], based on its own clear, unequivocal deposition testimony, never intends to, and never will enter into a contract for any Exxxotica event.  For this reason, the Resolution did not cause Three Expo to suffer an injury in fact as to any of its claims against the City.  Additionally, this means that there is no causal connection between any injury and damages and that Plaintiff has no redressable injuries.[1]

---

[1] Before the City filed its motion challenging Three Expo's standing, Jeffrey Handy, one of Three Expo's two governing members, responded to general questions in his deposition about the company's operations by saying that Three Expo always had its subsidiary LLC enter leases with venues for its Exxxotica conventions and that Three Expo would never enter such a lease directly.  However, Handy was not asked if Three Expo would have made an exception for the purpose of accessing the Dallas Convention Center for Exxxotica 2016. Patrick Perrino, the other governing member of Three Expo, who is a lawyer and the legal spokesman for the company, declared under oath subsequently that the company would have made an exception.  He said Three Expo would have entered a lease with the City directly if it had been offered the option of doing so in order to stage Exxxotica 2016 in the Convention Center as the parties had initially planned.  The record does not suggest any reason that Three Expo would not have found it practicable to make such an exception under the

8

No. 17-10632

Continuing to adopt facts set forth in the City's briefs, the district court found that "[b]ecause Three Expo has expressly stated that it had no intention of ever entering into a contract with the City for any Exxxotica event, . . . Three Expo did not suffer an injury in fact . . . as a result of the Resolution's prohibiting the City Manager from entering into a contract with [Three Expo]." "In sum," the district court concluded, "the only injuries Three Expo alleges are those resulting from the nonoccurrence of the 2016 Exxxotica expo. But Three Expo has failed to show that it was the Resolution that prevented the 2016 Exxxotica event from occurring."

However, it was not the Resolution alone that prevented the staging of Exxxotica 2016 in the Convention Center. Instead, it was the entirety of all of the actions by those who acted on behalf of the City to bar the convention from that site—including the actions of the mayor, the City Council members, the downtown property owners, and the multiple interest and civic groups who publicly declared that Exxxotica was unfit and inappropriate for expression and viewing in a public facility and called for its prohibition and suppression. The record clearly reflects that the City's actions—up to and including the resolution—prevented Exxxotica 2016 from occurring.

II.

After setting aside the district court's clearly erroneous findings of fact, we must apply the clearly established legal principles governing standing to the evidence of record. We review the district court's dismissal for lack of standing de novo. *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

---

circumstances. However, we decline to dwell on this factual debate because we ultimately find that the City prevented Exxxotica 2016 from occurring because of public opinion adverse to that convention regardless of which party's name was on the contract.

No. 17-10632

Article III of the United States Constitution limits a federal court's jurisdiction to "Cases" and "Controversies." U.S. CONST. art. III. "Those two words confine 'the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.'" *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).

Article III standing requires plaintiffs to demonstrate that they have suffered an "injury in fact" that is "fairly traceable" to the defendant's actions and will "likely . . . be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted). The claimant bears the burden of establishing standing, and "each element [of the three-part standing inquiry] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

When a plaintiff challenges the legality of government action, as Three Expo does in the present case, "the nature and extent of facts that must be averred . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action." *Id.* If the plaintiff is the object of the government action, as Three Expo is herein, "there is ordinarily little question that the action . . . has caused him injury, and that a judgment preventing . . . the action will redress it" so that the plaintiff has standing to assert his claim in federal court. *Id.* at 562; *see also Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 517-18 (5th Cir. 2014) ("In *Lujan*, the Court explained a key question is 'whether the plaintiff is himself an object of the [government] action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a

judgment preventing or requiring the action will redress it.'" (quoting *Lujan*, 504 U.S. at 561-62)).

When, however, as in *Lujan*, a plaintiff's injury derives from the government's allegedly unlawful action toward *someone else*, more is necessary. *Lujan*, 504 U.S. at 562. In that instance, "causation and redressability ordinarily hinge on the response of the regulated . . . third party to the government action." *Id.* The plaintiff's ability to meet the elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989)). In cases where the choice of a third party is essential to a plaintiff's standing, the plaintiff must introduce facts showing that the third party's choices "have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* While a plaintiff may still have standing where he is not the direct object of the government action, it is generally more difficult to establish. *Id.*

We conclude that the district court misinterpreted and misapplied the foregoing principles in dismissing Three Expo's suit for lack of standing. This is not a complicated case like *Lujan*, but a very simple one in which Three Expo sued the City of Dallas for denying it the use of its Convention Center to stage Exxxotica 2016, alleging a violation of its rights of freedom of speech, equal protection, and freedom from bill of attainder. Three Expo is itself the object of the injurious action by the City of Dallas that it challenges, and Exotica Dallas LLC is totally integrated with and controlled by Three Expo. Therefore this is not a case, as the dissent and the City mistakenly assume, in which prudential standing concerns are implicated or Three Expo's standing depends on the "unfettered choices made by independent actors not before the courts." *Id.*; *see also* 13A C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE &

11

No. 17-10632

PROCEDURE § 3531.9, at 671 (3d ed. 2008).  It is undisputed that because of Three Expo's inability to stage Exxxotica 2016 as planned, it suffered economic damages in loss of revenues from the convention, causing it to lose net profits and defrayal of the cost of advance publicity and other expenses.  *See K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) ("direct pecuniary injury" is usually "sufficient to establish injury-in-fact").  Further, it is also clear and free from serious controversy that Three Expo's injury is fairly traceable to the challenged action of the City in denying it a forum for its speech events and that it is likely that the injury will be redressed by a favorable decision in this case.  Additionally, Three Expo has sufficiently shown that the City's actions will cause Three Expo future reputational injury likely redressable by injunctive or declaratory relief, and "[t]he Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing."[2]  *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 161 (2d Cir. 2003) (citing *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 139 (1951); *see also LeBlanc*, 627 F.3d at 122-23.  Thus, Three Expo established the three elements required for standing on each of its claims and should be permitted to proceed with its suit.  For these reasons, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

[2] Though Three Expo has not pointed us to any direct evidence of the effect of the resolution on its reputation, we have previously inferred constitutionally cognizable reputational injury from a party's profession and the challenged action alone.  *See Walker v. City of Mesquite*, 129 F.3d 831, 832-33 (5th Cir. 1997) (holding that a district court's finding that an attorney was guilty of "blatant misconduct" was sufficient to show cognizable reputational injury).

No. 17-10632

E. GRADY JOLLY, Circuit Judge, concurring in the judgment:

I concur to the extent that the opinion holds that Three Expo has sustained a direct injury, and has established causation and redressability, sufficient to establish standing, and in remanding to allow the district court to proceed further from that point.

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

The panel majority opinion says that this case is a "very simple one." In reaching the conclusion that the plaintiff has standing, however, the panel majority opinion ignores the text of the City's resolution. It ignores the fact that the plaintiff never tried to contract with the City after the resolution was passed. It ignores the fact that the plaintiff, by its own admission, never even intended to contract with the City. It ignores the proper application of the Supreme Court's prudential-standing jurisprudence. And it ignores the district court's well-supported factual findings and instead substitutes its own evaluation of the facts.

I.

We review a district court's rulings on the issue of standing *de novo*. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). "A district court's factual findings, including those on which the court based its legal conclusions, are reviewed for clear error." *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 538 (5th Cir. 2009)). We review a district court's "factual findings with great deference, and cannot reverse them simply because we would reach a different conclusion." *Zimmerman v. Cty. of Austin*, 881 F.3d 378, 383 (5th Cir. 2018), *petition for cert. filed*, (U.S. July 20, 2018) (No. 18-93). If there are two permissible views of the evidence, "the factfinder's choice between them cannot be clearly erroneous." *Id.*

This appeal arises from a factual attack on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and Three Expo bore the burden to establish standing by a preponderance of the evidence. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). No "presumptive truthfulness attach[ed]" to Three Expo's allegations, and the district court was "free to

weigh the evidence and satisfy itself . . . of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

## II.

Article III of the U.S. Constitution "grants the federal courts jurisdiction over claims between plaintiffs and defendants only if they present a 'case or controversy.'" *Doe v. School Bd. of Ouachita Par.*, 274 F.3d 289, 292 (5th Cir. 2001). To establish standing, Three Expo must show that: (1) "it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact"; (2) there is a causal connection between the injury and the conduct complained of such that "the injury is fairly traceable to the defendant's conduct" and not to the conduct of some third party not before the court; and (3) "a favorable judgment is likely to redress the injury." *Miss. St. Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) (quoting *Hous. Chronicle Publ'g Co. v. Cty. of League Cty.*, 488 F.3d 613, 617 (5th Cir. 2007)). "An injury in fact is an invasion of a legally protected interest which is 'actual or imminent, not conjectural or hypothetical.'" *Barbour*, 529 F.3d at 544 (quoting *Lujan*, 504 U.S. at 560).

"[S]tanding is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim [it] seeks to press and for each form of relief that is sought." *Cty. of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). Different constitutional claims call for distinct injury-in-fact analyses because of the different injuries that they protect against. *Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017).

## III.

The district court made three critical findings of fact that should have led us to conclude that Three Expo lacked standing on its claim for monetary relief: (1) that the resolution did not cause the non-occurrence of the

convention; (2) that Three Expo has no intention of contracting with the City; and (3) that Three Expo and Exotica Dallas are distinct legal entities.

The panel majority opinion reaches its contrary conclusion, that the plaintiff has standing, by discarding the first finding and substituting its own evaluation of the facts. Under the panel majority's view of the facts, the resolution prohibited even Exotica Dallas from contracting with the City. Thus, because the resolution put the brakes on the convention, Three Expo itself had standing to sue because the resolution caused it to lose the money it would have made from the convention.

This is a mistake. In the instant case, the experienced district court judge found that Three Expo had not met its burden to show that the City would refuse to contract with Exotica Dallas. The district court considered the text of the resolution, which clearly forbids only a contract between the City and Three Expo, not with the entity (Exotica Dallas) that planned to enter the contract. It emphasized that neither Three Expo nor Exotica Dallas ever attempted to contract with the City after the resolution was passed. It looked to the City's statements that Exotica Dallas has never requested a contract to lease convention center space and, as a result, the City has never denied such a request. The record, furthermore, is devoid of any evidence that Three Expo or Exotica Dallas communicated with anyone from the convention after the resolution was passed. Even assuming that both views of the evidence—that the resolution prevented the convention or that it did not—may be permissible, it is well-established by the Supreme Court that when "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Cty. of Bessemer Cty., N.C.*, 470 U.S. 564, 574 (1985); *see also United States v. Harris*, 740 F.3d 956, 968 (5th Cir. 2014) (deferring to the district court's factual findings under clear-error review when two witnesses gave conflicting accounts of the facts). The district court

No. 17-10632

considered the evidence and found that the resolution did not cause the non-occurrence of the convention. The panel majority opinion substitutes its own evaluation of the evidence for the district court's factual finding—something that the clear-error-review standard forbids.

With this factual finding properly left undisturbed, we should have concluded that Three Expo lacks standing. This is where the district court's two other critical findings—that Three Expo never intended to contract with the City and that Three Expo and Exotica Dallas are distinct legal entities—come into play. An alleged injury is too speculative to establish standing "when the injury's existence depends on the decisions of third parties." *Hotze v. Burwell*, 784 F.3d 984, 995 (5th Cir. 2015) (quoting *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009)). That is exactly the case here: Three Expo's loss of money resulted from a third party, Exotica Dallas, failing to apply for a contract.[1] On the district court's facts, Exotica Dallas could have applied for a contract: the resolution did not prevent it from doing so. On the district court's facts, Three Expo cannot argue that its injury did not involve a third party: Three Expo never intended to do what the resolution prohibited. On the district court's facts, Three Expo cannot argue that Exotica Dallas is not a third party: they are, in fact, legally distinct entities. On the district court's facts, Three Expo's injury is too hypothetical to meet the injury-in-fact requirement and not "fairly traceable" to the defendant's conduct.

---

[1] The panel majority's citation to *Duarte v. Cty. of Lewisville*, 759 F.3d 514 (5th Cir. 2014) is inapposite. *Duarte* was concerned with whether parties who were not the explicit target of an ordinance had standing to challenge the regulation. *See Contender Farms, L.L.C. v. U.S. Dep't of Agric.*, 779 F.3d 258, 265 (5th Cir. 2015). *Duarte*'s "practical impact" test for establishing injury-in-fact would perhaps be relevant if Exotica Dallas were a party attempting to establish standing to challenge the resolution by asserting that it was also injured by the resolution.

17

No. 17-10632

There is no reason to question the district court's basis for finding these last two facts.  In reaching its conclusion that Three Expo never intended, and never will intend, to contract with the City, the district court relied on Three Expo's own admission to this effect.  In reaching its conclusion that Three Expo and Exotica Dallas are distinct legal entities, the district court relied on the statements of Jeffery Handy, one of Three Expo's governing members.  Handy insisted that the contract be written to Exotica Dallas, and Exotica Dallas would have owned any future Exxxotica events in Dallas.[2]  And because, as explained, the panel majority opinion is wrong to discard the first fact, it should have concluded that the plaintiffs lacked standing.  Three Expo has not borne its burden.

The panel majority opinion turns to futility in an attempt to excuse Exotica's decision not to attempt to contract with the City.  But that does not save Three Expo's claims, either.  "[S]tanding cannot be conferred by a self-inflicted injury." *Zimmerman*, 881 F.3d at 389; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").  Even though the resolution's text does not ban Exxxotica from occurring, Exotica Dallas did not even try to contract with the City after the resolution's passage.  It is pure speculation that when presented with an actual contract from an entity not named in the resolution, the City would have read a broader ban into the resolution's text.  *See Davis v. Tarrant Cnty.*, 565 F.3d 214, 220 (5th Cir. 2009)

---

[2] The panel majority opinion errs to the extent that it implies that, because Exotica Dallas was "totally integrated with and controlled by Three Expo," the two entities had an alter-ego relationship.  At oral argument, Three Expo's counsel argued the entities were alter egos, but this was never pleaded or argued below.  In fact, throughout this litigation, Three Expo has emphasized that the two entities are distinct.  The district court found that Three Expo and Exotica Dallas were distinct entities, and we must defer to that finding.

(rejecting a futility argument where the plaintiff "speculate[d] that his application would have been rejected if he had reapplied under the Plan due to his rejection under the superseded guidelines."). Three Expo bore the burden to make a "substantial showing" of futility. *Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. 1998). Evidence of convention center employees' general understanding of the effect of the resolution is not enough. Accordingly, I would hold that the futility doctrine does not apply here.

Three Expo's claim that it is "ready, able, and willing" to enter into a contract with the City, a statement it made long after litigation had begun, also fails to establish standing. This statement stands in contrast to its prior assertion that it did not intended to contract with the city and never would intend to do so. "[W]e assess standing as of the time a [lawsuit] is filed." *Clapper*, 568 U.S. at 426; *see also Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) ("[S]tanding is not created by a declaration in court pleadings."). At that time, Three Expo's lack of intent to contract with the City was abundantly clear.

## IV.

In addition to monetary relief, Three Expo seeks declaratory and injunctive relief on its First Amendment and Equal Protection Clause claims. Although the analysis differs under these two provisions because they protect against different injuries, standing under both of them requires an intent to engage in constitutionally protected conduct. *Barbour*, 529 F.3d at 545 ("To prove standing to raise a First Amendment facial challenge, . . . a plaintiff must produce evidence of 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.'"); *Gratz v. Bollinger*, 539 U.S. 244, 261–62 (2003) (noting that "[i]t is well established that intent may be relevant to standing in an equal protection challenge"; however, a party seeking to establish standing "need only

No. 17-10632

demonstrate that it is able and ready to [apply for the benefit] and that a discriminatory policy prevents it from doing so on an equal basis" (quoting *Ne. Fla. Chapter, Assoc. of Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993))).[3]  As explained, the district court permissibly found that Three Expo did not intend to ever enter into a contract with the City.  Thus, I would affirm the dismissal of the claims for declaratory and injunctive relief.

V.

Three Expo further contends that it has standing because the resolution is an impermissible Bill of Attainder creating a reputational injury.  Under our reputational-injury precedent, Three Expo might be able to establish standing on this claim.  However, although Three Expo argued in one sentence that the resolution was generally a Bill of Attainder in response to the City's motion to dismiss, it did not raise its reputational-injury argument before the district court.  Therefore, I would affirm the district court because Three Expo forfeited this argument.  *See Davis v. Fort Bend Cnty.*, 893 F.3d 300, 308 (5th Cir. 2018) ("As we have held, if a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court." (quoting *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994))).

VI.

In the alternative, I would also hold that Three Expo lacks prudential standing on the First Amendment and Equal Protection claims because it seeks to assert the rights of a third party, Exotica Dallas.[4]  Our standing

---

[3] "The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Jacksonville*, 508 U.S. at 666.

[4] Though the district court did not reach the question of prudential standing, the City raised the issue in the district court.

jurisprudence consists of "two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement; and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). Prudential standing has historically prohibited litigants from raising another person's legal rights, prohibited litigants from raising generalized grievances that are more appropriate for the representative branches, and required that a plaintiff's complaint fall within the zone of interests protected by the law invoked. *Id.* at 12; *see also* 13A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3531 (3d ed.). Without these prudential "limitations— closely related to Art. III concerns but essentially matters of judicial self-governance—the courts would be called upon to decide abstract questions of wide public significance even though judicial intervention may be unnecessary to protect individual rights." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

As explained, to establish prudential standing, "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Superior MRI Servs.*, 778 F.3d at 504 (quoting *United States v. Johnson*, 632 F.3d 912, 919–20 (5th Cir. 2011)). Plaintiffs may bring claims on behalf of third parties only if: (1) the litigant suffered an injury-in-fact creating a "'sufficiently concrete interest' in the outcome of the dispute"; (2) "the litigant [has] a close relationship to the third party"; and (3) "there [is] some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).

Three Expo was not the party seeking access to the convention center. Three Expo's right of access under its intended plan always would have existed only vis-à-vis the third party, Exotica Dallas, which would have been the party in privity with the City. Even assuming, *arguendo*, that Three Expo could

establish the first two prongs of prudential standing, it would fail on the third.[5] The panel majority opinion goes to great lengths to establish a close relationship between Three Expo and Exotica Dallas: they have overlapping ownership and governance, as well as a Management & Services Agreement between them. But nothing about this relationship hinders Exotica Dallas's "ability to protect [its] own interest," *id*. at 411, and the panel majority opinion does not explain why Exotica Dallas could not have brought this lawsuit.

## VII.

Standing goes to the core of our power to hear a case, precluding us from taking up cases that are beyond the boundaries set by Article III. We cannot transgress those boundaries by ignoring facts and substituting our own findings for those of the able district court. Instead, our duty here is to apply the law to the facts as the district court has found them. On those facts, Three Expo lacks both Article III and prudential standing. I therefore must dissent.

---

[5] For the reasons discussed above, Three Expo would also fail on the first prong because it cannot establish an injury-in-fact.