# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-31034

United States Court of Appeals
Fifth Circuit

**FILED**

March 17, 2020

Lyle W. Cayce
Clerk

CELL SCIENCE SYSTEMS CORPORATION,

    Plaintiff - Appellant

v.

LOUISIANA HEALTH SERVICE ; INDEMNITY COMPANY, doing business as Blue Cross Blue Shield of Louisiana,

    Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:17-CV-1658

Before DAVIS, HO, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

This case comes before our court on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), based on standing.  We AFFIRM the judgment of the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-31034

## I.

Cell Science Systems Corporation (CSS) is the developer of the ALCAT test, a blood test used by healthcare providers to identify food and chemical sensitivities in their patients. The dispute in the instant matter arose when Blue Cross Blue Shield of Louisiana (BCBSLA) refused payment to CSS for ALCAT tests that had been administered to patients who were participants and/or beneficiaries of health benefit plans managed by BCBSLA. CSS is not a participating provider in BCBSLA's network of providers. Because it has no contractual relationship with BCBSLA, CSS sought reimbursement for the ALCAT tests pursuant to purported assignments of benefits from the patients.

The plans at issue are governed by the Employee Retirement Income Security Act (ERISA). 29 U.S.C. §1001, *et seq.* CSS filed suit against BCBSLA as the plan administrator and plan fiduciary. In its initial complaint, CSS asserted claims under §502(a)(1)(B), §502(c), and §502(a)(3). BCBSLA filed a motion to dismiss for lack of jurisdiction and failure to state a claim. While BCBSLA's motion to dismiss was pending, CSS filed an amended and supplemental complaint. On August 20, 2018, the district court, concluding that CSS had failed to demonstrate standing, granted BCBSLA's motion and dismissed the matter without prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.

We review *de novo* a grant of a motion to dismiss, applying the same standards as the district court. *LeClerc v. Webb,* 419 F.3d 405, 413 (5th Cir. 2005). Here, the motion to dismiss was brought under Rule 12(b)(1) and Rule 12(b)(6). "When a motion to dismiss for lack of jurisdiction is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."

2

*Crenshaw-Logal v. City of Abilene, Tex.,* 436 F. App'x 306, 308 (5th Cir. 2011) (per curiam) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).  On a Rule 12(b)(1) motion to dismiss, the party asserting jurisdiction bears the burden of proving that jurisdiction exists.  *Ramming*, 281 F.3d at 161.

## III.

*A. ERISA Standing*

Our first inquiry is whether standing is jurisdictional.  On appeal, CSS contends that the district court erred in treating standing as a jurisdictional issue.  Our court's precedent, however, indicates that the district court did not err in so doing.  *See Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) ("As a matter of subject matter jurisdiction, standing under ERISA § 502(a) is subject to challenge through Rule 12(b)(1)."); *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006) ("[S]tanding to bring an action founded on ERISA is a jurisdictional matter."); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002) ("Standing is jurisdictional.  [A]bsent a valid assignment of benefits . . . , [Plaintiff] would have no derivative standing to sue . . . under ERISA Section 502."); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.3d 569, 572 (5th Cir. 1992) (*Hermann II*), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012), (analyzing ERISA standing as a question of subject matter jurisdiction).

Rather than accept this precedent, CSS attempts to reframe the standing analysis altogether.  CSS contends that Article III standing is a jurisdictional prerequisite but that the standing at issue here is prudential standing and should be considered under Rule 12(b)(6) rather than Rule 12(b)(1).  *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795-96 (5th Cir. 2011).  CSS

further submits that the Supreme Court drew this distinction between Article III standing and prudential standing in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). In *Lexmark*, the Court was tasked with determining whether the plaintiff had standing to sue under the substantive statute.[1] 572 U.S. at 127–28. However, the primary inquiry there was whether the plaintiff fell within the *class* of persons that has a right to sue. *Id.* This required the Court to apply a zone-of-interests analysis, using traditional tools of statutory interpretation, to determine whether the statute encompassed the particular plaintiff's claim. *Id.* Notably, the Court clarified that labeling the zone-of-interests test as one of prudential standing is a misnomer because the test is more properly viewed as one of statutory interpretation. *Id.*; *see Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 506 (5th Cir. 2015).

Here, however, there is no issue of statutory interpretation and therefore no need to apply the zone-of-interests test in our standing analysis. CSS clearly does not fall within the class of persons to whom the ERISA statute gives the right to sue. *See Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 250 (5th Cir. 2019) ("ERISA does not supply the provider with a basis for bringing its claim directly against the [plan administrator/fiduciary]; instead, the provider's standing to bring this lawsuit must be derived from the beneficiary and it is subject to any restrictions contained in the plan."). Yet, CSS contends it has standing through purported assignments of benefits from the patients, who have a right to sue under the statute as plan participants and/or beneficiaries. Consequently, before us is an issue of third-party standing. The *Lexmark* Court, by contrast, expressly

---

[1] As a factual distinction from the instant case, the plaintiff in *Lexmark* brought a claim of false advertising; thus, the relevant statute at issue there was the Lanham Act, not ERISA.

declined to address this discrete issue. *Lexmark*, 572 U.S. at 127 n.3. ("This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day.").

Moreover, our court has since directly addressed the limited applicability of *Lexmark* to questions of prudential standing. *See Superior MRI,* 778 F.3d at 506. In *Superior MRI*, the plaintiff cited *Lexmark* for the proposition that prudential standing may not be used as a jurisdictional bar. *Id.* at 505–06. However, our court clarified that such an application of *Lexmark* is misplaced: "[b]ecause the *Lexmark* holding deals only with the zone-of-interests test and not with the requirement that a party assert its own rights, *Lexmark* does not control here." *Id.* at 506. Like the plaintiff in *Superior MRI*, CSS must "assert its own rights" to demonstrate standing. *See id.* at 504–06. Such a requirement is jurisdictional in nature. *Cf. Dialysis Newco*, 938 F.3d at 250 (concluding that a district court lacks jurisdiction where the provider cannot demonstrate standing through a valid assignment of benefits). Seeing no reason to revisit our precedent regarding standing under ERISA, "we are bound to follow our precedent until the Supreme Court squarely holds to the contrary."[2] *See Superior MRI*, 778 F.3d at 506 (citing *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 394 (5th Cir. 2014)).

Because Rule 12(b)(1) applies, we next consider whether the attack on the complaint is facial or factual. "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as

---

[2] Our court's consistent treatment of ERISA standing as a jurisdictional issue is further underscored by *Lee v. Verizon*, a post-*Lexmark* decision, wherein our court held, "[a]s a matter of subject matter jurisdiction, standing under ERISA § 502(a) is subject to challenge through Rule 12(b)(1)." *Lee*, 837 F.3d at 533.

true for the purposes of the motion. A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. Moreover, a 'factual attack' under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891–92 (3d Cir. 1977)).

We agree with the district court that BCBSLA has launched a factual attack because it has challenged the underlying facts supporting the complaint, i.e. the validity of the assignment, rather than merely challenging the allegations on their face. Therefore, the court may take material outside of the pleadings, such as affidavits, testimony, and other evidentiary materials, into account when evaluating the issue of jurisdiction. *Irwin v. Veterans Admin.,* 874 F.2d 1092, 1096 (5th Cir. 1989).

Additionally, because a factual attack was raised, the burden of proof shifts to CSS. "If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Moreover, "when a factual attack is made upon federal jurisdiction, no presumptive truthfulness attaches to the [plaintiff's] jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). Accordingly, in order to survive the Rule 12(b)(1) motion to dismiss for lack of jurisdiction, CSS was required to put forth evidence of valid

and enforceable assignments of benefits from the ERISA plan participants and/or beneficiaries.

*B. Assignment of Benefits*

We now turn to the substantive question of whether CSS has established a valid assignment, and therefore has standing. Our court has held that "ERISA health care benefits are assignable. ERISA contains no anti-assignment provision with regard to health care benefits of ERISA-governed medical plans, nor is there any language in the statute which even remotely suggests that such assignments are proscribed or ought in any way to be limited." *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988) (*Hermann I*).

CSS contends that the contracts assign all rights to CSS, pointing to an example in a document submitted by BCBSLA that reads in relevant part:

> "I hereby assign all medical benefits to which I am entitled to CSS Ltd., Corp. If insurance payments for CSS are sent directly to me, I will endorse and send to CSS promptly . . . I assume responsibility for payment if insurance claim is denied and for any monies owed for any co-insurance or deductible amounts. I will insure payment of any outstanding balance due after claim is processed."

CSS alleges that this language covers all medical benefits and all rights to payment. Conversely, BCBSLA contends that even assuming these forms are valid and enforceable, they do not assign the right to file suit for benefits or for breach of fiduciary duty, or the right to request plan documents. To support its position, BCBSLA cites to controlling precedent stating that "only an express and knowing assignment of an ERISA fiduciary breach claim is valid." *Texas Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entertainment Co.*, 105 F.3d 210, 218–19 (5th Cir. 1997) (holding that a broad provision assigning the rights of anyone accepting benefits under the relevant

No. 18-31034

act was insufficient to assign the fiduciary breach claims). Additionally, following CSS's Rule 26(a) disclosures wherein CSS failed to disclose assignment forms for several of the claimed patients, BCBSLA challenged the factual allegation that CSS had actually obtained valid assignments on behalf of all of the claimed plan participants. Accordingly, the burden then shifted to CSS to produce evidence of valid and enforceable assignments.

Yet, despite having leave to amend its complaint and to file supplemental briefs, CSS did not submit any materials attempting to prove subject matter jurisdiction, instead focusing on its contention that it should not have to provide evidence at this stage in the pleadings. However, as our precedent makes clear, Rule 12(b)(1) requires the district court to evaluate jurisdiction, with the burden of proof on CSS. CSS nevertheless failed to attach any of the purported assignments to its complaint, its amended and supplemental complaint, or any of the four briefs submitted in response to the pending motion to dismiss. As the district court noted, this repeated failure undermines the allegation that CSS had obtained valid assignments of rights it asserts herein. Because CSS failed to meet its burden of proving, by a preponderance of the evidence, that it had obtained valid assignments, the district court correctly concluded that BCBSLA is entitled to dismissal.

But even assuming *arugendo* that the language of the form cited by CSS assigns a right to bring suit, there can be no valid assignment because the contract includes anti-assignment language:

> A Member's rights and Benefits under this Contract are personal to the Member and may not be assigned in whole or in part by the Member. We will recognize assignments of benefits to Hospitals if both this Contract and the Provider are subject to La. R.S. 40:2010. If both this Contract and the Provider are not subject to La. R.S. 40:2010, We will not recognize assignments or attempted assignments of benefits. Nothing contained in the written description of health coverage shall be construed to make the

health plan or Us liable to any third party to whom a Member may
be liable for the cost of medical care, treatment, or services.

CSS counters that BCBSLA is estopped from asserting the anti-assignment
language.

*C. Estoppel*

In order "[t]o establish an ERISA-estoppel claim, the plaintiff must
establish: (1) a material misrepresentation; (2) reasonable and detrimental
reliance upon the representation; and (3) extraordinary circumstances." *Mello
v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005). On the first element,
CSS contends that BCBSLA made a material misrepresentation by failing to
assert the anti-assignment language until now, instead denying payment
because the tests were allegedly "investigational." To support this assertion,
CSS relies heavily on our decision in *Hermann II* in which our court held that
the plan was estopped from asserting an anti-assignment clause after failing
to assert the clause at any point during the three years of ongoing investigation
and communication regarding the claim; yet, the plan relied on the anti-
assignment clause in ultimately denying the claim. *Hermann II*, 959 F.2d at
574–75. Unlike the plan in *Hermann II*, here, BCBSLA did not invoke the
anti-assignment clause to deny the claim; it invoked the anti-assignment claim
only as a challenge to jurisdiction. There is no indication from the record that
BCBSLA either misrepresented or misled CSS with respect to its intention to
enforce the anti-assignment clause in its plan. *See Mello*, 431 F.3d at 445
(citing *Weir v. Federal Asset Disposition Ass'n*, 123 F.3d 281, 289–90 (5th Cir.
1997)).

CSS then argues that it reasonably and detrimentally relied on
BCBSLA's alleged preauthorization of the test and the past payments covering
the test. Our court has held that a party's reliance is not reasonable if it is

inconsistent with the clear and unambiguous terms of the plan documents. *Id.* at 447 (citing *Sprague v. GMC*, 133 F.3d 388, 404 (6th Cir. 1998)). On this element, CSS's argument is again misplaced. CSS may have reasonably and detrimentally relied on BCBSLA's preauthorization and prior payments in believing the claim would not be denied. Yet, that reliance is irrelevant to BCBSLA's representations with respect to the anti-assignment clause CSS wishes to estop because the anti-assignment clause clearly and unambiguously prohibits a participant's assignment of benefits.

Finally, CSS must show "extraordinary circumstances." *See id.* at 444–45. Although, as the district court noted, our court has not specifically defined the term, we have recognized the Third Circuit's approach with approval. *High v. E-Systems, Inc.,* 459 F.3d 573, 580 n.3 (5th Cir. 2006). This approach generally defines extraordinary circumstances as those that involve bad faith, fraud, or concealment, as well as possibly when "a plaintiff repeatedly and diligently inquired about benefits and was repeatedly misled" or when "misrepresentations were made to an especially vulnerable plaintiff." *Id.* CSS relies on essentially the same argument it presented for the first element—the fact that BCBSLA brought up the anti-assignment provision now rather than when the payments were denied. Once again, CSS fails on this element because it has presented no allegation, argument, or evidence demonstrating "extraordinary circumstances" in this case. Therefore, BCBSLA is not estopped from asserting the anti-assignment provisions in the plan.

## IV.

For the reasons set forth above, CSS has failed to demonstrate by a preponderance of the evidence that it has standing to bring suit; accordingly, the district court did not err in granting the motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. We AFFIRM.